Filed 2/3/16

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D066907 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF32712) |
| LAURA REYNOSO VALENZUELA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge. Affirmed.

Steven J. Carrol, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Marvin E. Mizell Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Laura Reynoso Valenzuela of carjacking (Pen. Code, § 215, subd. (a)[1]; count 1), reckless evasion of a peace officer (Veh. Code, § 2800.2, subd. (a); count 2), and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a),

---

1      Unless otherwise specified, subsequent references are to the Penal Code.

count 3.) Valenzuela waived a jury trial on two alleged prison priors. The trial court found one alleged prison prior true and the other not true. The court sentenced Valenzuela to a total term of six years eight months in prison, consisting of the middle term of five years on count 1, eight months (one-third the middle term) on count 2, one year for the prison prior conviction, and the middle term of two years, concurrent, on count 3.

On appeal, Valenzuela asserts that the trial court erred by allowing the prosecutor to ask her whether she had a prior conviction for reckless evasion. Valenzuela also asserts that Proposition 47 requires this court to reduce count 3 to a misdemeanor and strike the one-year sentence enhancement imposed for her prison prior. We reject Valenzuela's contentions and affirm the judgment.

FACTUAL BACKGROUND

A. *The People's Evidence*

At around 7:30 a.m. on March 7, 2014, Ana Lopez turned on her car to warm it up before taking her six-year-old son to school. The car was parked in her driveway in front of her house in Brawley. After starting her car Lopez went inside her residence, and came back outside two or three minutes later with her son. At trial Lopez testified that as she started to open the rear door on the driver's side to put her son into his car seat, Valenzuela ran up to her and pushed her out of the way. Lopez fell to the ground while her son stood nearby crying. Valenzuela jumped into the car and quickly drove off. Lopez watched Valenzuela drive down the alley, turn onto Fifth Street and then onto K Street. Lopez went back inside to get her phone and immediately called 911.

2

Lopez came back outside while on the phone with a 911 operator. A neighbor who Lopez had never met before, Rudy Ortiz, approached Lopez and told her that he had seen Valenzuela take the car and that Valenzuela had almost run him over. Brawley Police Officer Frank Morales was dispatched to the area. After performing a preliminary search for the stolen car, Officer Morales drove to Lopez's house, where he spoke with Lopez, her son, Lopez's husband (who arrived home after Valenzuela took the car), and Ortiz.

In the meantime, other police officers in the area continued to search for Valenzuela. Sergeant Jeff Caudill, who was in uniform, was on patrol nearby in his marked police car. About 20 minutes after the incident was reported, Caudill spotted Valenzuela driving Lopez's car. Caudill made a U-turn to head in the direction that Valenzuela was driving and turned on his car's overhead lights. Valenzuela sped ahead and Caudill turned on his car's sirens and followed her. Two officers in a second marked police car, including Morales, saw Caudill and followed behind with lights and sirens on. As the police pursued her, Valenzuela crossed into oncoming traffic to pass cars, skidded into a field, then drove back onto a residential street where she drove at a speed of up to 65 miles per hour. Valenzuela ran through several stop signs and through an intersection with crossing guards as children walking to school scrambled to get out of her way. Valenzuela continued speeding through the residential neighborhood until the car's wheels locked and she crashed head on into a telephone pole.

After Valenzuela hit the telephone pole, the second police car pulled up to the stopped car. Valenzuela threw open the driver's door, hitting the police car, and

3

attempted to run away. Caudill yelled to Valenzuela to stop. As she tried to run past Caudill, he grabbed her and tackled her to the ground. After Valenzuela was in custody, Morales searched Lopez's car. Inside he found a backpack containing Valenzuela's property. Morales also searched Valenzuela and found a plastic bag containing crystal methamphetamine in a front pocket of her pants. Valenzuela was arrested and taken to the hospital. At the hospital, Morales read Valenzuela her rights under *Miranda v. Arizona* (1966) 384 U.S. 436, which she waived, and interviewed her. When Morales asked Valenzuela what happened, she responded "I panicked. I fucked up." She said she took Lopez's car because she was homeless and "it beat walking."

At trial, Morales testified that Valenzuela told him that she noticed Lopez's running car as she walked down an alley. She denied having pushed Lopez and told Morales that no one was present when she took the car. Morales also testified that Valenzuela told him that she knew she should have stopped when the police began pursuing her but that she couldn't, and that she felt like she had blacked out.

B. *Defense Evidence*

Valenzuela testified that she saw Lopez's running car while she was riding her bicycle in the area. After spotting the car, she rode to the house where Ortiz was watering plants and left her bicycle and other possessions there. Valenzuela testified that she went back on foot and took Lopez's car. She denied that Lopez was present at the time she took the car. Valenzuela stated that she had never seen Lopez prior to their first encounter in court in this case. Valenzuela admitted running from the police and driving recklessly during the pursuit. She said that she fled because she did not want to go back

4

to jail. Valenzuela also admitted having suffered prior felony convictions for car theft in 2010 and receiving stolen property in 2012. In addition, Valenzuela admitted that she had methamphetamine in her possession at the time she was arrested.

Ortiz testified that he knew Valenzuela through his cousin, who lived near Lopez. He had met Valenzuela two or three times prior to the morning of the incident. That morning, Ortiz was outside his cousin's home watering the lawn. Valenzuela approached Ortiz and asked him if he would watch her belongings. Valenzuela left her bicycle and a bag with Ortiz, and quickly left. Shortly after that, Ortiz heard tires spinning and saw Valenzuela drive past him in Lopez's car. He then saw Lopez yelling hysterically that someone had taken her car. Ortiz did not want to talk to the police because of a recent interaction with the police and because of his prior felony convictions.

DISCUSSION

I

*Admission of Prior Felony Conviction*

Valenzuela first contends that the trial court erred by admitting her prior felony conviction for reckless evasion. She asserts that without the admission of this evidence, it is reasonably probable that she would not have been convicted of carjacking, and that reversal of the conviction is therefore required.

A

Before trial, the district attorney filed a motion in limine seeking permission to impeach Valenzuela with her prior felony convictions for reckless evasion (Veh. Code, § 2800.2, subd. (a)) and vehicle theft (Veh. Code, §10851, subd. (a)) in 2010, and

5

receiving stolen property (§ 496, subd. (a)) in 2012. The prosecution's motion stated that impeachment would be limited to the fact of the convictions, and conceded that the underlying facts would not be relevant unless Valenzuela attempted to mislead the jury or minimize the facts of her earlier conviction. The motion stated that "[t]he People intend to admit the defendant's certified prior convictions; or certified RAP sheet . . . to impeach in the event she testifies," and that if the defendant "admits the prior convictions on direct examination, the [P]eople will not inquire regarding these convictions on cross examination." The trial court deferred ruling on the motion until the close of the prosecution's case.

The prosecution also filed a motion in limine to admit Valenzuela's prior convictions for vehicle theft and reckless evasion under Evidence Code section 1101, subdivision (b).[2] The prosecution sought admission of the evidence on this basis to prove (1) Valenzuela's knowledge that she was required to yield to the police and (2) that she had the specific intent to evade the officers during the pursuit. The motion detailed the facts of Valenzuela's prior convictions for vehicle theft and reckless evasion, which stemmed from an incident in 2010 that was factually similar to the instant case.

---

[2]     Evidence Code section 1101, subdivision (a), requires the exclusion of evidence of a "person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) . . . to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) Subdivision (b) permits "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . . .) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).) The final subdivision of the statute, (c), provides: "Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness." (Evid. Code, § 1101, subd. (c).)

Valenzuela opposed the motion, arguing that the evidence was not relevant and that even if it were, its probative value was outweighed by its prejudicial effect. The trial court ruled that the evidence would not be admissible to show that Valenzuela knowingly evaded police and had the specific intent to do so because other evidence—including Morales's testimony that Valenzuela admitted to stealing the vehicle and fleeing from the pursuing police officers, and Caudill's testimony concerning the dangerousness of Valenzuela's driving during the chase—established Valenzuela's specific intent to evade law enforcement officers.

After the prosecution finished presenting its case in chief, the district attorney renewed the motion seeking permission to impeach Valenzuela with her prior conviction for reckless evasion. The prosecutor argued that there was no question that the prior offense was a crime of moral turpitude and, therefore, could properly be admitted to show that Valenzuela had not been truthful in her account of the crime. The prosecutor further argued that the admission of the prior conviction would not be unduly prejudicial because the defense's opening statement and Valenzuela's anticipated testimony established that Valenzuela was not challenging the current charge of reckless evasion. The only issue that was in dispute was the allegation that Valenzuela had used force to take Lopez's car. In response, Valenzuela's counsel argued that the prior conviction should be excluded under Evidence Code section 352. The court stated "I'm going to tentatively find that under [Evidence Code section] 352 there is some prejudice or there could be some prejudice, depending upon what her trial testimony is. I'll leave it open . . . for reconsideration once we hear a portion of her cross-examination or direct exam,

7

depending upon whether [the evasion charge is] contested or not." The trial court went on to state that it would allow the evidence under Evidence Code section 1101, subdivision (b), only if Valenzuela's testimony brought into question her intent to evade or her knowledge that she was being pursued.

On direct examination, Valenzuela admitted that she had been convicted of car theft in 2010 and receiving stolen property in 2012. During cross-examination, Valenzuela testified that she did not know Ortiz. Directly following this testimony, the prosecutor requested a sidebar conference, which was not reported. Immediately after the sidebar conference, the prosecutor asked Valenzuela whether it was true that she had been convicted of felony reckless evasion of a police officer in 2010. Valenzuela responded "[y]es." No further questions about the conviction were posed.

During closing arguments, both sides asserted that the primary issue at trial was whether Valenzuela had used force when taking Lopez's car. The District Attorney asserted that Lopez's testimony proved this element and Valenzuela's attorney argued that it was Lopez, and not Valenzuela, who was lying. In his rebuttal closing statement, the prosecutor argued that Lopez had no reason to lie, and that photographs taken shortly after the incident showing dirt on Lopez's pants from falling on the ground and Lopez's son crying on the recording of the 911 call, corroborated Lopez's testimony. The prosecutor also told the jury that they could consider Valenzuela's prior felony convictions for car theft and evading police in determining her credibility.

8

B

Valenzuela contends that there was no basis for the trial court to admit the testimony concerning her prior conviction for reckless evasion under Evidence Code section 1101, subdivision (b), because the facts of the current reckless evasion charge were established by other evidence. She also contends that the prior conviction was not properly admitted for impeachment purposes because its relevance to her credibility was outweighed by its prejudicial effect. Because the sidebar conference was not reported, the basis for the trial court's decision to admit the prior conviction for evasion is not known.[3] On appeal, however, the parties agree that because the defense did not present evidence contesting Valenzuela's knowledge that she was being pursued by the police or her specific intent to evade the police, there was no basis to admit the prior conviction under Evidence Code section 1101, subdivision (b).[4]

Given this agreement, we presume that the trial court determined that the evidence was admissible to impeach Valenzuela's credibility in order to bolster the prosecution's assertion that Lopez, not Valenzuela, was being truthful in her description of the crime. That the evidence of the prior conviction for reckless evasion was introduced solely to impeach Valenzuela is also supported by the facts that (1) the question was asked directly after a statement by Valenzuela concerning her relationship with Ortiz, which could have

---

[3]    Although it does not warrant reversal, the court's evidentiary ruling during the sidebar conference should have been reported.

[4]    Although the Attorney General concedes that the prior conviction was not admitted as relevant evidence under Evidence Code section 1101, subdivision (b), because Valenzuela pleaded not guilty to the evasion charge, even undisputed elements of the offense remained at issue. (*People v. Burney* (2009) 47 Cal.4th 203, 245.)

been interpreted as being false, and (2) the prosecutor limited his questioning to the fact of the prior conviction and posed no questions concerning the circumstances of the conviction.

Article 1, section 28, subdivision (f)(4) of the California Constitution provides in relevant part:  "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment . . . in any criminal proceeding."  "A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352."[5]  (*People v. Clark* (2011) 52 Cal.4th 856, 931.)  Reckless evasion of a peace officer under Vehicle Code section 2800.2 is a crime of moral turpitude that reflects on a witness's honesty.  (*People v. Dewey* (1996) 42 Cal.App.4th 216, 222.)

"When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify."  (*People v. Clark*, *supra*, 52 Cal.4th at p. 931.)  Because the trial court's discretion to admit or exclude impeachment evidence is broad, a reviewing court ordinarily upholds the trial court's exercise of discretion.  (*Id*. at p. 932; *People v. Hinton* (2006) 37 Cal.4th 839, 888.)

---

5    Evidence Code section 352 states:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

The trial court was tasked with exercising its discretion to determine whether Valenzuela's 2010 conviction for evasion should have been excluded under Evidence Code section 352. Valenzuela asserts, "[T]here is no record which explains why the evidence was admitted after the court twice denied the People's request" and therefore, "no way to determine the basis for the trial court's change of mind." As discussed, however, the trial court reserved ruling on the admission of the prior conviction for impeachment purposes at the hearing on the People's motions in limine. When the issue was revisited after the prosecution rested, the court did not conclusively determine that the evidence should be excluded as unduly prejudicial, but rather, only that "there could be some prejudice, depending upon what her trial testimony is." The court explicitly stated that the issue could be revisited during Valenzuela's testimony. Given these proceedings, we disagree with Valenzuela's characterization of the ruling that occurred during the unreported sidebar conference as a reversal of the court's earlier rulings.

We are similarly unpersuaded by Valenzuela's assertion that the trial court necessarily abused its discretion because its ruling during the sidebar conference was not recorded by the court reporter. "Although the record must 'affirmatively show that the trial court weighed prejudice against probative value' [citation] . . . [citation], the necessary showing can be inferred from the record despite the absence of an express statement by the trial court." (*People v. Prince* (2007) 40 Cal.4th 1179, 1237; *People v. Padilla* (1995) 11 Cal.4th 891, 924 ["the trial judge 'need not expressly weigh prejudice against probative value—or even expressly state that he has done so' "].)

11

The record demonstrates that before the trial commenced, the court considered the admissibility of Valenzuela's prior conviction for reckless evasion and the proper test. Specifically, the prosecution argued in its motion in limine that any prejudice from the admission would be minimal and would not outweigh the probative value of the evidence to Valenzuela's credibility. The test was discussed again when the prosecution reiterated its request to introduce the evidence at trial. The arguments made to the court and the court's statements reflect that the court understood its obligation to balance the probative value of the evidence against its prejudicial effect, and the other relevant factors.

Further, the prejudice that resulted from the admission of the fact of the conviction alone was minimal in light of the admission of evidence of Valenzuela's two other prior felony convictions and her concession during her testimony that she knew she was being pursued and that she intended to evade the police. On this record, we conclude that the trial court did not abuse its discretion in admitting evidence of Valenzuela's prior conviction for reckless evasion. (*People v. Watson* (2008) 43 Cal.4th 652, 684; *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1385 ["It is well established that a trial court is vested with wide discretion in determining relevance and weighing the prejudicial effect of evidence against its probative value," and "[e]videntiary rulings will not be overturned on appeal in the absence of a clear abuse of that discretion, upon a showing that the trial court's decision was palpably arbitrary, capricious, or patently absurd, and resulted in injury sufficiently grave as to amount to a miscarriage of justice"].)

Finally, even if we assume that the trial court abused its discretion in admitting the 2010 conviction, admission of the prior conviction was harmless. The evidence of

12

Valenzuela's guilt of carjacking was supported by Lopez's testimony, and corroborated by the photographs of Lopez's pants and the 911 recording in which her son could be heard crying in the background. Moreover, as discussed, Valenzuela's credibility had already been called into question by her admission during direct examination that she had previously incurred felony convictions for vehicle theft and receiving stolen property, and her admissions that she stole Lopez's car and intentionally evaded police.

II

*Request to Reduce Felony Possession of Methamphetamine to a Misdemeanor Under Proposition 47*

A

In her opening brief Valenzuela asserts that Proposition 47 requires this court to reduce her sentence for possession of methamphetamine to a misdemeanor. Valenzuela was convicted on September 24, 2014, and sentenced on October 24, 2014. She filed her notice of appeal on October 27, 2014. On November 5, 2014, the statutory amendments set forth in Proposition 47 went into effect. On March 5, 2015, Valenzuela filed a petition in this case for recall and resentencing under section 1170.18, seeking to reclassify her conviction for violation of Health and Safety Code section 11377, subdivision (a), as a misdemeanor. The District Attorney opposed the petition, contending that because Valenzuela's appeal of the conviction was pending, the trial court did not have jurisdiction. At the hearing on the petition, Valenzuela's counsel conceded that the trial court lacked jurisdiction and requested a six-month continuance to allow the appeal to be decided. The trial court took the matter off its calendar without prejudice to Valenzuela renewing her petition.

13

Neither Valenzuela, in her opening brief, nor the Attorney General in its brief, acknowledged the occurrence of these post-notice of appeal proceedings. After the opening and respondent's briefs were filed, the superior court clerk supplemented the appellate record pursuant to California Rules of Court, rule 8.340[6] with Valenzuela's petitions under section 1170.18, subdivision (a), in this case and in a prior case (discussed in the following section), the prosecutor's opposition to the petition in this case, the court's rulings on both petitions, and the relevant reporter's transcripts. Recognizing these later proceedings, Valenzuela does not abandon her request for this court to directly reduce her conviction to a misdemeanor in her reply brief, but she requests in the alternative that the case be remanded for the trial court to consider the petition that she has already filed in this case.

B

On November 4, 2014, California voters approved Proposition 47 (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 1, p. 70) and it became effective the next day (Cal. Const., art. II, § 10, subd. (a)). Among other things, the initiative amended Health and Safety Code section 11377. Prior to the amendment, possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a), was punishable as either a felony or a misdemeanor. (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108 (*Lynall*).) As a result of the amendment, possession of a

---

6    California Rules of Court, rule 8.340 directs the clerk to "promptly certify and send a copy of the amended abstract of judgment or other order" and related documents or transcripts to the reviewing court and parties if "after the record is certified the trial court amends or recalls the judgment or makes any other order in the case, including an order affecting the sentence or probation." (Cal. Rules of Court, rule 8.340.)

14

controlled substance is now punishable as a misdemeanor "unless the defendant 'has one or more prior convictions' for an offense specified in Penal Code section 667, subdivision (e)(2)(C)(iv)—which lists serious and violent felonies that are sometimes referred to as "super strike" offenses'—or for an offense that requires the defendant to register as a sex offender under section 290, subdivision (c)." (*Lynall, supra,* at pp. 1108-1109.)

Under the initiative's resentencing and reclassification mechanism, "a person 'currently serving' a felony sentence for an offense that is now a misdemeanor under Proposition 47, may petition to recall that sentence and request resentencing. (§ 1170.18, subd. (a).) A person who satisfies the statutory criteria shall have his or her sentence recalled and be 'resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (*Id.* subd. (b).) Section 1170.18 also provides that persons who have completed felony sentences for offenses that would now be misdemeanors under Proposition 47 may file an application to have their felony convictions 'designated as misdemeanors.' (§ 1170.18, [subds. (f)-(h)].) Section 1170.18, subdivision (k) provides in part that '[a]ny felony conviction that is recalled and resentenced . . . or designated as a misdemeanor . . . shall be considered a misdemeanor for all purposes . . . .' " (*Lynall, supra*, 233 Cal.App.4th at p. 1109.)

C

Valenzuela relies on *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) in support of her request for this court to reduce her conviction under Health and Safety Code section 11377, subdivision (a), to a misdemeanor. Under section 3, it is the general rule that new

15

Penal Code statutes apply prospectively only. (§ 3; *People v. Brown* (2012) 54 Cal.4th 314, 319.) In *Estrada* the California Supreme Court created a limited exception to this general rule. (*Brown, supra*, at p. 323.) *Estrada* held that a "legislative amendment that lessens criminal punishment is presumed to apply to all cases not yet final (the [enacting legislative body] deeming its former penalty too severe), unless there is a 'saving clause' providing for prospective application." (*People v. Smith* (2015) 234 Cal.App.4th 1460, 1465, italics omitted; *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1195-1196 [courts assume, absent contrary evidence, the legislative body intended that an amended statute reducing punishment for a particular offense apply to all defendants whose judgments are not yet final on the operative date of the amended statute].)

Even if there is no express "savings clause," however, other indicia of legislative intent may warrant prospective application of new legislation. (See *People v. Nasalga* (1996) 12 Cal.4th 784, 793 [amendments that mitigate punishment should be applied retroactively "in the absence of a saving clause or other indicia of a contrary legislative intent"].) A law that lessens criminal punishment is not applied retroactively if the enacting legislative body, here the electorate, has "demonstrate[d] its intention [of prospective application] with sufficient clarity that a reviewing court can discern and effectuate it." (*Ibid*.)

"[O]ur interpretation of a ballot initiative is governed by the same rules that apply in construing a statute enacted by the Legislature." (*People v. Park* (2013) 56 Cal.4th 782, 796 (*Park*).) When we interpret a statute, "our goal is ' " 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates

16

the purpose of the law. ' " ' " (*People v. Albillar* (2010) 51 Cal.4th 47, 54-55 (*Albillar*).) Proposition 47 was enacted by the electorate so it is the voters' intent that controls. (See *Park*, *supra*, at p. 796.) We first examine the words of the statutory language added or amended by the ballot initiative, " ' "giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent. " ' " (*Albillar*, *supra,* at p. 55.) If the language is ambiguous, we examine other indicators of the voters' intent, particularly the analysis and arguments contained in the official ballot pamphlet. (*People v. Briceno* (2004) 34 Cal.4th 451, 459.) If, however " ' "the language . . . is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the [electorate's] intent is unnecessary. " ' " (*Albillar*, *supra,* at p. 55.) "Once the electorate's intent has been ascertained, the provisions must be construed to conform to that intent." (*Park*, *supra,* at p. 796.)

The language of Proposition 47 states clearly the electorate's intent that all defendants who have already been sentenced, including those whose judgments are not yet final, must use the procedure set forth in section 1170.18. Section 3 of the ballot pamphlet, which is labeled "Purpose and Intent," states: "In enacting this act, it is the purpose and intent of the people of the State of California to: [¶] . . . [¶] (4) Authorize consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors. [¶] [and] (5) Require a thorough review of criminal history and risk assessment of any individuals before resentencing to ensure that they do not pose a risk to public safety." (Ballot Pamp., Gen. Elec., *supra*, text of Prop. 47, § 3, p. 70.)

17

These two paragraphs show a clear intent not to permit the automatic application of Proposition 47 to anyone currently serving a sentence for a listed offense. Instead, they indicate an intent to authorize and allow resentencing by way of the petition mechanism only for those individuals whose criminal history and risk assessment warrant it. (See *People v. Shabazz* (2015) 237 Cal.App.4th 303, 313 (*Shabazz*) ["Proposition 47 does not contain an express saving clause. It does not refer to a person, like defendant, who has been convicted and sentenced but whose appeal is pending. But it does expressly, specifically and clearly address the application of the reduced punishment provisions to convicted felons who were sentenced or placed on probation prior to Proposition 47's effective date. And it does so without regard to the finality of the judgment"].)

This interpretation is consistent with the Legislative Analyst's analysis of Proposition 47, which states: "This measure allows offenders currently serving felony sentences for the above crimes to *apply* to have their felony sentences reduced to misdemeanor sentences. . . . However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed. In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime." (Ballot Pamp., Gen. Elec., *supra*, analysis of Prop. 47 by legislative analyst, p. 36, italics added.)

This interpretation of the electorate's intent is also consistent with the ballot arguments. The opponents of the initiative measure argued that the measure was "an

invitation for disaster" in part because it would make "10,000 felons . . . eligible for early release."  (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument in favor of Prop. 47, p. 38; see also argument against Prop. 47, p. 39.)  The proponents of the initiative responded by arguing that "Proposition 47 does not require automatic release of anyone.  There is no automatic release.  It includes strict protections to protect public safety and make sure rapists, murderers, molesters and the most dangerous criminals cannot benefit."  (Ballot Pamp., Gen. Elec., *supra*, rebuttal to argument against Prop. 47, p. 39.)

Because we conclude that the electorate did not intend that Proposition 47 be automatically applied to persons already sentenced for listed offenses, in order to obtain relief, Valenzuela must renew her petition in the trial court.  (See *Shabazz, supra,* 237 Cal.App.4th at p. 308 ["[T]he voters have not expressed an intention to permit us on *direct appeal* to reduce defendant's felony convictions to misdemeanors without the filing of an application"]; *People v. Noyan* (2014) 232 Cal.App.4th 657, 672 ["Defendant is limited to the statutory remedy of petitioning for recall of sentence in the trial court once his judgment is final, pursuant to Penal Code section 1170.18"].)

III

*Request to Strike Prison Prior Subsequently Reduced to a Misdemeanor Under
Proposition 47*

A

Valenzuela's sentence was enhanced by one year under section 667.5, subdivision (b), based on her 2012 felony conviction for receiving stolen property (§ 496, subd. (a)) in superior court case number JCF28616.  As discussed, on November 5, 2014, less than two weeks after Valenzuela was sentenced in this case, Proposition 47 went into effect.

19

On November 17, 2014, Valenzuela filed a petition for recall of sentence of her 2012 conviction in case number JCF28616 and requested resentencing as a misdemeanor under section 1170.18, subdivision (a). On December 4, 2014, the superior court granted the petition and ordered the conviction "designated as [a] misdemeanor . . . ."

In her opening brief, apparently unaware that the petition in case number JCF28616 had been granted, Valenzuela asserts that Proposition 47 automatically reduces her 2012 conviction to a misdemeanor and requires this court to strike the one-year enhancement as an unlawful sentence. Also unaware of the proceedings in case number JCF28616, the Attorney General asserted in its respondents' brief that Valenzuela must bring a petition under section 1170.18, subdivision (f), to reduce the prison prior conviction "to a misdemeanor so the trial court can determine whether to strike it." Recognizing that the 2012 conviction had been reduced, Valenzuela's reply brief asks this court "to remand this case for a resentencing hearing as to the one year prison term imposed for the prison prior."

Because the Attorney General was unaware at the time it filed its brief that the conviction in case number JCF28616 had already been reduced to a misdemeanor, we requested that the parties file supplemental briefs addressing the impact of the reduction. In response, the Attorney General suggests that this court should "stay the [current] appeal and, without issuing a remittitur, order a limited remand for the trial court to hear a petition under section 1170.18, subdivision (a), or an application under section 1170.18,

20

subdivision (f), to strike the prison prior under the 'misdemeanor for all purposes' provision of section 1170.18, subdivision (k)."[7]

B

We do not agree with the parties that remand for the trial court to consider whether to strike the one-year statutory enhancement is warranted. Valenzuela asserts that section 1170.18, subdivision (k), which provides that any felony conviction that is recalled, resentenced or re-designated as a misdemeanor "shall be considered a misdemeanor for all purposes," means that the conviction in case number JCF28616 cannot serve as the basis for the one-year enhancement she received. This issue is a question of statutory construction appropriately considered by this court. (See *People v. Taylor* (1992) 6 Cal.App.4th 1084, 1090-1091 ["statutory interpretation is a question of law [citation], and appellate courts review such issues independently"].) Additionally, the Attorney General's suggestion that we remand to allow Valenzuela to file a petition under section 1170.18 is not well taken. Section 1170.18 provides a mechanism for reducing felony convictions to misdemeanors, but contains no procedure for striking a prison prior if the felony underlying the enhancement has subsequently been reduced to a misdemeanor.

As noted, in her opening brief, Valenzuela argued that section 1170.18, subdivision (k), should be construed to invalidate her one-year prison prior enhancement. The provision states in full that "[a]ny felony conviction that is recalled and resentenced

---

[7]    In its initial brief, the Attorney General included a footnote stating that although the issue was not ripe on appeal because Valenzuela had yet to file an application under section 1170.18, subdivision (f), "a prison prior should not be stricken when the felony underlying is reduced to a misdemeanor under Proposition 47 because, among other reasons, the prison prior under section 667.5, subdivision (b), was based on appellant's recidivist status, not on the underlying criminal conduct."

under subdivision (b) or designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes, except that such resentencing shall not permit that person to own, possess, or have in her or her custody or control any firearm or prevent his or her conviction under Chapter 2 (commencing with Section 29800) of Division 9 or Title 4 of Part 6." (§ 1170.18, subd. (k).) Valenzuela contends that this language "suggests that the electorate wanted eligible offenders like [her] to be shielded from the collateral consequences of prior prison terms stemming from felonies that the law now recognizes as misdemeanors."

We disagree. Nothing in this language or the ballot materials for Proposition 47 indicates that this provision was intended to have the retroactive collateral consequences that Valenzuela advances. To the contrary, as discussed, the procedures set forth in section 1170.18 that must be followed to obtain the resentencing and reclassification benefits of Proposition 47 indicate the electorate's intent for a specific, limited prospective application of the relief available under the new law. (*Shabazz, supra,* 237 Cal.App.4th at pp. 313-314; *People v. Noyan, supra,* 232 Cal.App.4th at p. 672; *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1100 [section 1170.18, subdivision (k), does not apply retroactively to change the rules applied to determine appellate jurisdiction].)

Valenzuela relies on *Park, supra,* 56 Cal.4th 782 and *People v. Flores* (1979) 92 Cal.App.3d 461 (*Flores*) to support her assertion that section 1170.18, subdivision (k), should be applied retroactively to reduce her sentence. The holdings of these cases, however, do not provide authority for a court to reach back and strike a prison prior

22

enhancement where the prior offense is reduced to a misdemeanor *after* the defendant has been convicted of and sentenced for a later offense. Rather, these cases hold that a sentence enhancement under section 667.5 is not available when the prior conviction that forms basis for the enhancement is reduced *before* the new offense is committed.

In *Park* the California Supreme Court considered whether a conviction for a serious felony that was subsequently reduced to a misdemeanor under section 17, subdivision (b)(3), and dismissed pursuant to section 1203.4, subdivision (a)(1), before the defendant committed a later offense could serve as the basis for a felony enhancement under section 667, subdivision (a). *Park* concluded that once the conviction was reduced to a misdemeanor, it could no longer serve as the basis for the enhancement: "When the court properly exercises its discretion to reduce a wobbler to a misdemeanor, it has found that felony punishment, *and its consequences*, are not appropriate for that particular defendant." (*Park*, 56 Cal.4th at p. 801, italics added.) The court noted, however, that "there is no dispute that . . . defendant would be subject to the section 667(a) enhancement had he committed and been convicted of the present crimes *before* the court reduced the earlier offense to a misdemeanor." (*Id*. at p. 802, italics added.) Because Valenzuela's 2012 conviction for receiving stolen property was a felony at the time she was sentenced in this case, under the logic of *Park* that conviction properly served as the basis for the trial court's imposition of a one-year enhancement under section 667.5, subdivision (b).

Valenzuela's reliance on *Flores* is similarly misplaced. In *Flores*, the Legislature reduced the crime of marijuana possession, which served as the basis for the defendant's

23

prison prior sentence enhancement, to a misdemeanor *before* the defendant committed and was convicted of the later offense that was the subject of the appeal. (*Flores*, 92 Cal.App.3d. at pp. 464, 470.) There is no dispute that Valenzuela's conviction was reduced to a misdemeanor *after* she committed and was sentenced for the current offenses.

Additionally, having served a prior prison term for a felony conviction is the qualifying criterion for the enhancement that Valenzuela received under section 667.5, subdivision (b).[8] As the Attorney General points out, a section 667.5 enhancement is based on the defendant's status as a recidivist, not on the underlying criminal conduct. (See *People v. Gokey* (1998) 62 Cal.App.4th 932, 936 ["Sentence enhancements for prior prison terms are based on the defendant's status as a recidivist, and not on the underlying criminal conduct, or the act or omission, giving rise to the current conviction"].) At the time Valenzuela was sentenced, the 2012 conviction was a felony and she had served a prison sentence for that conviction. The latter fact is not altered by Proposition 47.

Finally, Valenzuela argues that not striking her section 667.5, subdivision (b), enhancement is a violation of her right to equal protection under the Fourteenth Amendment to the United States Constitution. She argues that no rational basis justifies excluding her from the benefit that she would have received if she had committed, and been sentenced for, the present offenses after her 2012 receipt of stolen property conviction was reduced to a misdemeanor under Proposition 47. This contention has no

---

8    The provision states that "the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony . . . . (§ 667.5, subd. (b).)

merit.  " 'The Legislature properly may specify that such statutes are prospective only, to assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' (*In re Kapperman* (1974) 11 Cal.3d 542, 546, [114 Cal.Rptr. 97, 522 P.2d 657]; see also *People v. Willis* (1978) 84 Cal.App.3d 952, 956, [149 Cal.Rptr. 301] [acknowledging that "all effective dates of statutes are somewhat arbitrary," but rejecting equal protection claim]; *People v. Superior Court* (*Gonzales*) (1978) 78 Cal.App.3d 134, 142, [144 Cal.Rptr. 89] [same].)  The voters have the same prerogative.' " (*People v. Floyd* (2003) 31 Cal.4th 179, 188.)

## DISPOSITION

The judgment is affirmed.

_____

AARON, J.

WE CONCUR:

_____

McCONNELL, P. J.

_____

NARES, J.