Filed 05/15/2017

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re DONTA LAMONT CAMPBELL<br><br>    on Habeas Corpus. | G052575<br><br>(Super. Ct. No. 12WF0369)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Kazuharu Makino, Judge. (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed and remanded.

Tony Rackauckas, District Attorney, David R. Gallivan, Deputy District Attorney, for Plaintiff and Appellant.

Paul J. Katz, under appointment by the Court of Appeal, for Defendant and Respondent.

The Orange County District Attorney (OCDA) appeals from the trial court's order granting Donta Lamont Campbell's petition for writ of habeas corpus. The

OCDA argues the following: the court erred by granting the habeas petition without first issuing an order to show cause (OSC); Campbell was not in custody on his prior convictions; and Proposition 47 did not apply to prior prison terms.[1] Because we agree the trial court erred by granting relief without first issuing an OSC, we need not address the OCDA's other contentions. We reverse the court's order granting Campbell's petition for writ of habeas corpus.

FACTS

In September 2012, a jury in Orange County Superior Court (OCSC) case No. 12WF0369 convicted Campbell of possession of cocaine base for sale (Health & Saf. Code, § 11351.5), five counts of transportation of controlled substances (Health & Saf. Code, § 11352, subd. (a)), and misdemeanor possession of a controlled substance without a prescription (Bus. & Prof. Code, § 4060). Later, Campbell admitted he suffered seven prior prison terms (Pen. Code, § 667.5, subd. (b)), including as relevant here the following six OCSC cases that were for violating Health and Safety Code section 11390, subdivision (a): 00CF1529; 01CF2618; 03CF3299; 05HF2234; 08CF2020; and 09CF2914 (collectively referred to as the six prior felony convictions).

In November 2012, the trial court sentenced Campbell to 11 years in jail as follows: four years on count 4 and seven consecutive one-year terms for the prior prison term allegations. The sentences on the remaining counts were concurrent or stayed terms. This court affirmed his convictions. (*People v. Campbell* (May 27, 2014, G047708) [nonpub. opn.].)

In November 2014, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act (Proposition 47), which made certain drug- and

---

[1] This issue is currently pending before the California Supreme Court in *People v. Valenzuela* (2016) 244 Cal.App.4th 692 (*Valenzuela*), review granted March 30, 2016, S232900.

2

theft-related offenses misdemeanors, unless the defendant was ineligible (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1089; Pen. Code, § 1170.18). Campbell filed a Proposition 47 application. In April 2015, Campbell's six prior felony convictions were designated misdemeanors.

In June 2015, Campbell filed a petition for resentencing pursuant to Penal Code section 1170.18, subdivision (a), because his current sentence included six one-year terms for convictions that were no longer felonies. Later that month, Campbell filed a petition for writ of habeas corpus. The petition was a one-page form titled, "For Proposition 47 Resentencing Only."

On the afternoon of July 13, 2015, there was a hearing before Judge Gassia Apkarian. Deputy district attorney (DDA) Nicole Nicholson and Assistant Public Defender (APD) Mark Brown appeared. When Judge Apkarian asked Brown to explain the purpose of the hearing, Brown stated it was "a fairly long process." He explained "we" had meetings, in person and by e-mail, with the OCSC to develop an expedited habeas procedure to grant relief to Campbell and others under Proposition 47. Brown stated the OCDA did not object to the expedited habeas procedure during any of those meetings. He added the OCSC revised its rules and drafted its own habeas petition, which it posted on its website. Brown said that while talking to DDA Nicholson off the record, he was then aware the OCDA was opposed to Campbell's habeas petition both substantively and procedurally. Brown stated that had he known the OCDA was opposed to the expedited habeas procedure, he would not have waited two months while the OCSC developed it. Brown stated he would have filed "a regular habeas petition" and Campbell would not have unnecessarily spent two months in custody. Brown requested Judge Apkarian grant Campbell's habeas petition.

DDA Nicholson opposed granting the habeas petition. Nicholson stated she similarly objected to granting the habeas petition at a hearing before Judge Kazuharu

3

Makino earlier that morning.[2] She stated the following: "There [was] no express acceptance of these petitions. We were present at a meeting, we received e-mails, we had our law and motion department working on those, we are opposed to this." She asked for one week to file a response.

Judge Apkarian explained the process by which the OCSC and counsel developed the expedited habeas procedure for Proposition 47 cases. She said the following: "Just to sum up, two months ago there was a meeting, about two months ago there was a meeting where the representatives of the Public Defender's office, the [OCDA's] office, the Alternate Public Defender's office, court staff, and three judges were present. The discussion was to come up with a method in order to have these habeas, these petitions, for writ of habeas corpus heard expeditiously. . . . [¶] . . . [¶] At the time of the meeting, objections were not made by the [OCDA]. Subsequently when Judge [Jonathan] Fish was circulating e-mails and samples for these forms, the [OCDA's] office was privy to all of these e-mails, so was I, there were no objections made in writing, telephonically, orally, verbally, we have never heard of any objections until today, when Judge Makino informed me that in fact the [OCDA] [was] now objecting to the entire petition."

DDA Nicholson replied as follows: "Well, the [OCDA] are objecting to the substantive -- we are objecting and opposing it, and Judge Makino informed me if we are objecting substantially, we are objecting to the vehicle that moves us into court." When Judge Apkarian asked whether the OCDA was objecting on both substantive and procedural grounds, Nicholson responded, "Yes." Judge Apkarian added, "So technically

_____

[2] At the hearing, after DDA Nicholson objected to Campbell's petition for resentencing, APD Brown withdrew the motion. Nicholson also objected to the habeas petition. Judge Makino transferred the habeas petition to Judge Apkarian for that afternoon.

4

you are not opposed to the vehicle, you are opposed to the substance behind the vehicle." Nicholson said, "Yes."

To clarify the record, APD Brown asserted everyone agreed to the expedited habeas procedure because "there was no objection to the ultimate answer[]" and the only issue was "how do we get there." Brown added that although the OCDA certainly had the right to change its position on the substantive law, two months earlier the OCDA agreed to the expedited habeas procedure.

DDA Nicholson stated the following: "And once again the record will be clear we did not technically agree to the procedure, we didn't oppose it, we didn't agree to it, it was a vehicle for these cases to come before the judge who is handling [Proposition] 47, and allow us an opportunity to be heard."

When Judge Apkarian stated the OCDA was "holding" its objection until one of the habeas petitions was filed and now the OCDA had changed its position on the substantive law, DDA Nicholson replied as follows: "I don't think that's accurate, your honor, with all due respect. I don't think there was actually truly a position that was taken. It was there was a discussion of how these cases would come before the court, and at that time we would then make our position heard at that time." Judge Apkarian continued the matter one week to allow the OCDA to file an informal response.

Three days later, the OCDA filed an informal response. Four days later, Campbell filed points and authorities in support of his habeas petition.

On July 23, 2015, there was a hearing before Judge Makino. DDA David R. Gallivan, DDA Nicholson, and APD Brown appeared.[3] After Brown stated the OCSC created and published an expedited habeas procedure for Proposition 47 cases, Judge Makino stated it was his understanding the "procedure was agreed to" but it now

---

[3] Judge Makino noted there were 11 similarly situated defendants, and DDA Dominic Bello and two other deputy public defenders appeared. Judge Makino stated his ruling on the procedural issue applied to all similarly situated defendants.

5

appeared the OCDA objected and the issue before him was whether there was an agreement or whether the OCDA's objection was waived. After Judge Makino said he was not involved in adopting the expedited habeas procedure and did not know whether "they were court-ordered procedures," Brown provided a detailed history of how the procedure developed.

APD Brown stated there was one in-person meeting where Judge Fish, Judge Apkarian, Judge Douglas J. Hatchimonji, OCSC clerks, OCDA representatives, Alternate Defender Derek Bercher, and Brown were present. He stated the judges agreed these defendants were entitled to relief and although he did not remember whether the OCDA representatives agreed, they certainly did not object. He said Judge Hatchimonji suggested "some sort of a habeas petition[]" and people focused on developing an expedited procedure.

APD Brown stated "there was approximately a two-month process" where Judge Fish, doing "the lion's share of the work[]" worked with the OCSC rules committee and developed an expedited habeas procedure. Brown stated that at some point Judge Fish sent an e-mail to the group apologizing for the delay but said he wanted to develop an expedited habeas procedure for all similarly situated defendants to use regardless of who represented them. Brown said that based on a form habeas petition he provided to the court, Judge Fish drafted and circulated by e-mail a form expedited petition for writ of habeas corpus and no one objected. Brown added that because no one objected, Judge Fish sent an e-mail stating, "we are now a go[]" and posted the form habeas petition and rules on the OCSC website.

APD Brown stated he drafted a proposed order and distributed it to the group by e-mail and no one objected. He added the rules required defendants to give 10-days' notice, but the OCDA did not object to the procedure until the matter was set on calendar.

6

DDA Nicholson responded as follows: "I was present at my first and only meeting where this was brought up by the defense. I never engaged in those discussions. I didn't agree, I didn't oppose. I absorbed the information. I waited to have a day in court to litigate this matter and to bring a representative from my office from law and motion to address it. [¶] There were several e-mails that went back and forth. I never expressly agreed; I also didn't oppose. It was my impression that I would be allowed an opportunity to discuss and object appropriately when this was actually brought before the court in this department. [¶] And if it was a misunderstanding that we were waiving, then that's a misunderstanding. But there's nothing that I have ever said that, yes, I agree to this. And I never said that in the meeting, and I never said it in an e[-]mail."

When Judge Makino attempted to clarify whether her position was she was waiting until the court hearing to raise objections to the expedited habeas procedure, DDA Nicholson replied the following: "If we had any, yes. I was going to address that with my law [and] motion department." Judge Makino asked whether she said that to anyone, and Nicholson answered as follows: "No. We were going to do that when it came to court and address at that time with my law [and] motion person present on the record in court to address any concerns we had on merit or procedure. I never waived or agreed to it at any point."

Judge Makino asked DDA Nicholson whether she was aware the group was creating a habeas petition and expedited process, she agreed she saw the e-mails and the documents. When he said she did not answer the question, Nicholson replied as follows: "There was a procedure that they were discussing with the court on how they're going to get these cases in before a judge in this courtroom doing [Proposition] 47. I saw those petitions. I never agreed to it; I never opposed it." When asked, she repeated she was going to let someone from the law and motion department raise any objections in court.

7

When Judge Makino asked DDA Gallivan whether "there [was] an objection to the form used to bring this petition for writ of habeas corpus[]" the following colloquy occurred:

"[DDA Gallivan]: No, not to the form. We did have an off-the-record discussion prior to this. I think based on the meetings, I think the way it's been brought before the court, we do not object to the form of it. [¶] But we're asking the court -- . . . Brown cited that new rules were promulgated as to how that form would then be litigated. I haven't seen those rules. I went on the judicial website or the [OCSC] website. Those rules are not online. I don't know where those new rules are, how we litigate these habeas petitions. And the form that the Public Defender is using is not the form that's on the website that was approved by the [OCSC].

"[Judge Makino]: I didn't even know there was a form on the website. So I don't know what the difference is between the forms. [¶] Do you have an objection to the forms that are being used by the Public Defender in these writs that are pending right now?

"[DDA Gallivan]: At this time, no. At any time. I'm not objecting to the form. My concern is the process moving forward from the form.

"[Judge Makino]: Okay. So any procedural objections to the use of this form you're waiving.

"[DDA Gallivan]: Only strictly to the use of this form. Correct.

"[Judge Makino]: Okay. You waive such as there's no points and authorities; there are no facts other than what is set out in those forms. So any -- there's going to be no claim of any deficiency in the facts that are set forth. There's going to be no claim that there's a lack of authority set forth.

"[DDA Gallivan]: No. We would be challenging that. We're just not objecting to the form they used.

8

"[Judge Makino]: Well, part of the form was that none of that was required. You're saying it's okay to use the form but the information provided on the form is deficient.

"[DDA Gallivan]: Deficient in the sense I don't think it gives the court enough information to grant the relief asked for. If they want to use a form that this court accepts, and it doesn't set forth enough information to convince this court to grant the relief, then I'm certainly going to object to that form.

"[Judge Makino]: Okay. To me it sounds like you are objecting because you're going to say, well, the form sets forth insufficient facts so that the court should just deny it on its face without any further hearing necessary on the merits of whether or not people in this circumstance are allowed any relief because there's not sufficient facts or authority set forth in the original petition.

"[DDA Gallivan]: But if the court was inclined -- if the court is inclined to find that we conceded the issue as to the form, that's why we provided substantive argument. We think it should be done on [a] substantive claim as well.

"[Judge Makino]: Here's what I don't want. I don't want someone to say, oh, we agree to this form, but by the way, if they win, we're going to say the information in the form is insufficient.

"[DDA Gallivan]: I understand.

"[Judge Makino]: Okay. So that's what I'm trying to find out. I mean is your position use of this form provides insufficient information to grant relief?

"[DDA Gallivan]: Then my answer is yes.

"[Judge Makino]: Okay. Well, then the form is not going to work because the form obviously does not comply with the requirements of a writ of habeas corpus in the traditional formal understanding of what a writ of habeas corpus is.

9

"[DDA Gallivan]:  And the reason we're here is if the court had found that I forfeited my ability to make that objection, then we were prepared to go on the merits. But we are objecting to the form.

"[Judge Makino]:  Okay.  Well, . . . Brown, what do you want to do? Because if you win, they're going to say, okay, the petitions were not sufficient on their face, they should have been summarily denied.  So if you win, you're going to face that issue upon any appellate review.

"[APD Brown]:  I'm prepared to face that issue on appellate review because I did comply with the court's procedures.

"[Judge Makino]:  Okay.  Well, I understand you complied.  But any court of appeal can say the court had no authority to require or impose on any party a waiver of the requirements on a writ of habeas corpus.  So even if it's court ordered, I don't think that would solve that problem.  [¶]  So if a party doesn't waive it, I don't think the court could basically order a waiver.  So but if you want -- if you're satisfied with it and you're willing to face it on appeal, I don't have a problem with that.

"[APD Brown]:  I'm satisfied and willing to face it on appeal."

There was a discussion about incorporating by reference Campbell's points and authorities to the other 11 cases.  DDA Gallivan objected "because we're still objecting on procedural grounds before we get to the substantive."  After defense counsel for the other defendants indicated they wanted to file a new writ, and Judge Makino said that would trigger the 10-day rule, Gallivan inquired where the 10-day rule was posted. APD Brown replied, "It was in an e[-]mail sent to . . . [DDA] Nicholson."  Nicholson said, "And it wasn't agreed to or opposed either."  After brief argument, Gallivan withdrew his objection and stipulated to the proposed incorporation by reference.

Judge Makino ruled Campbell and others were entitled to relief because under Proposition 47 any felony conviction that is designated as a misdemeanor is "a misdemeanor for all purposes," although it was "a very close call."  DDA Gallivan

10

objected Judge Makino did not address the OCDA's procedural objection, and Judge Makino stated defendants said they were willing to risk reversal on appeal. After Gallivan stated there were other issues that could have been briefed had the trial court issued an OSC, Judge Makino disagreed opining the one legal issue was clear. Gallivan stated he would have preferred to present his argument in a return after issuance of an OSC. Judge Makino replied, "That would probably be true had this whole procedure not been agreed to because in my view, the whole procedure basically excluded an OSC." When Gallivan asked whether Judge Makino was finding the OCDA agreed to the expedited habeas procedure, Judge Makino responded, "You waived any defects --." Gallivan said, "No, we didn't."

Judge Makino explained the OCDA waived any defects regarding "using the form[]" and it would have to argue before the appellate court whether that included waiving any defects to the OSC requirement. DDA Gallivan stated that although he initially did not object to the habeas form, he did ultimately object to it and he wanted his objection to be clear. Judge Makino said he would have to review the record. Gallivan contended he wanted it to be clear he objected to the habeas form and the expedited process. He asserted Judge Makino was required to rule on the procedural argument and he could not rule on the substantive argument "because the [OCDA has] never been ordered to show cause."

After DDA Gallivan disputed the OCDA waived any objection concerning the expedited habeas procedure, the following colloquy occurred:

"[Judge Makino]: Well, I think you're going to have to discuss that with the Court of Appeal based on what the record is in here about what you said before the ruling was made because once a ruling is made, all these arguments make no difference. The ruling has been made.

"[DDA Gallivan]: Is the court -- then I guess I'm asking the court what is the court's ruling on the procedural aspects of any objections?

11

"[Judge Makino]:  I have no further ruling.

"[DDA Gallivan]:  I don't believe the court has made a ruling, frankly, on the procedural aspects.

"[Judge Makino]:  Okay.  Well, I don't think I have to make a ruling.  So you can take that up with the Court of Appeal.

"[DDA Gallivan]:  If the court doesn't make a ruling, how can the Court of Appeal review the lack of a ruling?

"[Judge Makino]:  Well, I think you have to ask them.  Okay?  That's it."

After a short discussion regarding the appropriate order, DDA Gallivan contended the appropriate remedy was resentencing and not a reduction.  Judge Makino disagreed, explaining he was ruling on a habeas petition and not a Proposition 47 petition. When Gallivan continued to object, Judge Makino said he could also take that up with the Court of Appeal.

In a written order the same day, the trial court granted Campbell's habeas petition, vacating the one-year sentences on Campbell's six prior felony convictions.  The court ordered his recalculated sentence was five years.

At a hearing in a related case on August 3, 2015, DDA Bello voiced his numerous objections to the expedited habeas procedure, including that Judge Makino could grant relief without issuing an OSC.[4]  Before he granted the petition, Judge Makino stated, "Well, the procedural aspects, as before in the other writs, I consider them *waived*."  (Italics added.)

---

[4]     In an order dated June 17, 2016, this court granted Campbell's request for judicial notice of the reporter's transcript of the proceedings on August 3, 2015, in OCSC case No. 12CF0271.

12

DISCUSSION

"As a general matter, we review the grant of a writ of habeas corpus by applying the substantial evidence test to pure questions of fact and de novo review to questions of law. [Citation.] '[W]hen the application of law to fact is predominantly legal, such as when it implicates constitutional rights and the exercise of judgment about the values underlying legal principles, [the appellate] court's review is de novo.' [Citation.]" (*In re Taylor* (2015) 60 Cal.4th 1019, 1035.)

*I. Order to Show Cause*

A petition for a writ of habeas corpus is "largely procedural," requiring the court to determine whether the petition states a prima facie case for relief and whether the claims are procedurally barred. (*People v. Romero* (1994) 8 Cal.4th 728, 737-738 (*Romero*).) The court may request the custodian or real party in interest to file an informal response. (*Id*. at p. 737.) If the petition states a prima facie case on a claim that is not procedurally barred, appellate courts, because of practical realities, order the custodian to show cause, which directs the custodian to file a return explaining why the court should not grant relief. (*Id*. at p. 738.) After the custodian files the return, the "'principal pleading,'" the petitioner files a traverse. (*Id*. at p. 738.) "[T]hrough the return and the traverse . . . the issues are joined in a habeas corpus proceeding. [Citations.]" (*Ibid*.)

"[A]n [OSC] is an intermediate but nonetheless vital step in the process of determining whether the court should grant the affirmative relief that the petitioner has requested." (*Romero, supra,* 8 Cal.4th at p. 740.) The OSC creates a "'cause'" and frames the issues. (*Ibid*.) "As the means by which a judicial proceeding is instituted, the issuance of the . . . [OSC] is *mandatory*, not optional." (*Ibid*., italics added; Cal. Rules of Court, rule 4.551(c).) If the habeas petition makes a prima facie case for relief, "'the opposing side *must* be given an opportunity to file a return to the petition.'" (*Romero, supra,* 8 Cal.4th at p. 740, fn. omitted.)

13

However, "[t]he right to file a return in a habeas corpus proceeding is subject to *waiver*." (*Romero, supra,* 8 Cal.4th at p. 740, fn. 7, italics added.) If the right to file a return is waived, the court may grant relief without issuing an OSC. (*Ibid*.)

*A. Waiver*

In its opening brief, the OCDA argues the trial court erred by granting relief without first issuing an OSC. Nowhere does the OCDA mention waiver of this requirement. After Campbell contends both waiver and equitable estoppel apply, the OCDA replies it did not forfeit the right to file a return because it objected to the expedited habeas procedure before Judges Apkarian and Makino. But the OCDA nowhere justifies its conduct during the two months the group developed the expedited habeas procedure or explains how its conduct did not amount to a waiver. Despite its lackluster effort, we conclude the OCDA must prevail on this point.

In *Romero*, when the court discussed waiver of the right to file a return, the California Supreme Court stated as follows: "The right to file a return in a habeas corpus proceeding is subject to waiver. Upon being served with a copy of the petition, or upon receiving a request from the court for informal opposition under rule 60 of the California Rules of Court, the petitioner's custodian may *stipulate* to the truth of the petition's allegations and to the requested relief. Should this occur, the court in which the habeas corpus petition is pending may grant relief without issuing a writ of habeas corpus or an order to show cause." (*Romero, supra,* 8 Cal.4th at p. 740, fn. 7, italics added.)

While forfeiture is the failure to make the timely assertion of a known right, "waiver" is the "'intentional relinquishment or abandonment of a known right.'" (*United States v. Olano* (1993) 507 U.S. 725, 733; *People v. McKinnon* (2011) 52 Cal.4th 610, 636, fn. 16; *People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6.) The issue of a waiver is generally a question of fact, and thus, we review the trial court's ruling to determine whether it is supported by substantial evidence. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 983.)

14

There is no dispute that neither Judge Apkarian nor Judge Makino issued an OSC. The issue was whether the OCDA waived the right to file a return. *In re Olson* (2007) 149 Cal.App.4th 790 (*Olson*), is instructive, although unfortunately neither party discuss it.

In *Olson*, the superior court granted the relief requested in petitioner's habeas petition without issuing an OSC or a writ, and without ordering the filing of a return. (*Olson, supra,* 149 Cal.App.4th at pp. 794, 799.) On appeal, petitioner argued the People's failure to object to the procedure followed by the superior court constituted a forfeiture of the contention on appeal, particularly because the superior court had sought informal responses from the parties, indicating it was contemplating issuing the requested relief. (*Id*. at p. 801.) The *Olson* court rejected this argument, stating the following: "[T]here was no stipulation relieving the superior court of its duty to issue the OSC or the writ. Nor did the [People's] failure to object amount to the stipulation referred to in *Romero*." (*Id*. at p. 802.) The same is true here.

Here, the record includes no evidence the OCDA stipulated that it waived the right to file a return and thus relieved the trial court from issuing an OSC. Additionally, DDA Nicholson's silence during the two-month long process whereby the group develop the expedited habeas procedure did not amount to the stipulation referred to in *Romero*. Campbell, more than the OCDA, spends considerable time discussing whether the OCDA objected to the expedited habeas procedure at the July 23, 2015, hearing before Judge Makino. When DDA Gallivan's comments are read in their entirety, we conclude he objected to both the revised "petition for writ of habeas corpus" form and the expedited habeas procedure that eliminated the need for an OSC. But even had he not objected, his silence during that hearing did not constitute a stipulation pursuant to *Romero* and *Olson*, similar to the fact Nicholson's silence during the two months before the hearing did not constitute a stipulation pursuant to *Romero* and *Olson*.

15

Campbell relies on *People v. Whitson* (1998) 17 Cal.4th 229, 246-248, a case concerning whether there was an implied waiver of defendant's rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*), to assert a waiver can be implied here. We think Campbell's analogy to *Miranda* is inapt because a waiver by implication is not tantamount to a stipulation.

A "stipulation" is "[a] voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding." (Black's Law Dict. (10th ed. 2014) p. 1641, col. 1.) An "implied waiver" is "[a] waiver evidenced by a party's decisive, unequivocal conduct *reasonably inferring* the intent to waive." (Black's Law Dict. (10th ed. 2014) p. 1813, col. 2, italics added.)

A stipulation requires mutual assent between the parties concerning rights and duties whereas an implied waiver requires only a reasonable inference based on a party's conduct. Because an implied waiver is based on an inference, a logical leap from other facts to the conclusion, it is not the equivalent of a stipulation, an intentional agreement limited to its terms. Pursuant to *Romero* and *Olson*, an implied waiver is insufficient to convey to the trial court the party does not intend to file a return and agrees to dispense with the OSC requirement. The OCDA's participation in the two-month long process and failure to object, although not ideal, was not tantamount to the stipulation required by *Romero*.

## B. Estoppel

In his respondent's brief, Campbell contends the OCDA was equitably estopped from contesting the expedited habeas procedure. "The fundamental rule that a reviewing court does not consider arguments or theories that could have been but were not raised below 'is especially applicable to the doctrine of estoppel, which includes factual elements that must be established in the trial court. [Citation.]' [Citation.]" (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 490, fn. 6.)

16

Here, Campbell points to no place in the record, and we found none, that demonstrates he raised the issue of equitable estoppel below. The OCDA does not address this claim procedurally or on the merits. Judge Makino's comments at both the July 23, 2015, and August 3, 2015, hearings make clear his procedural ruling was based solely on waiver and not equitable estoppel. We will not address arguments raised for the first time on appeal. (*People v. Williams* (1997) 16 Cal.4th 153, 250; *Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 865, fn. 4.) Because Campbell did not argue equitable estoppel below, we decline his invitation to conclude the OCDA was equitably estopped from objecting to the expedited habeas procedure on the limited record before us. On remand, the parties may litigate the issue of equitable estoppel.

## C. *Pure Question of Law*

Campbell also asserts that because the issue of whether Proposition 47 applied retroactively was a pure legal question, there were no factual disputes and an OSC was unnecessary. It is true the OSC's function is to initiate a proceeding where factual issues are framed and decided. (*Romero, supra,* 8 Cal.4th at p. 740.) It is also true that at the July 23, 2015, hearing before Judge Makino, DDA Gallivan stated he was not going to present any evidence at the hearing on these writs. However, the OSC also "creates a 'cause,' thereby triggering the state constitutional requirement that the cause be resolved 'in writing with reasons stated' [citations]." (*Romero, supra,* 8 Cal.4th at p. 740.) Because Judge Makino did not issue an OSC, there was no legal issue, or cause, before him. Thus, his order vacating the one-year sentences on Campbell's six prior felony convictions is a nullity.

## D. *Final Thoughts*

Although we conclude the trial court erred by failing to issue an OSC, which would have instituted the proceeding, framed the factual issues, and created the cause (*Romero, supra,* 8 Cal.4th at p. 740), we conclude the OCDA could have done a better job of either participating in developing the expedited habeas procedure or voicing

17

its objections early in the process. It is not clear from the limited record before us the extent of this two-month long process to develop the expedited habeas procedure. APD Brown admitted to Judge Makino there was only one in-person meeting and everything else was done by e-mail.

What was the result of the one in-person meeting? Were the expedited habeas procedure and revised "petition for writ of habeas corpus" form distributed via e-mail and agreed to by all parties? Did the OCSC post the form and the expedited habeas procedure on its website? The record includes no "evidence" to answer these questions, only counsels' recollections.

It is not our role to instruct counsel on policy or how to litigate cases. The better practice though may have been for the OCDA to have someone from the law and motion department participate from the outset in the process to develop the expedited habeas procedure or immediately object. It is also not our role to advise the trial court on the inherent risk of relying on counsel's silence. We understand Judge Makino's frustration with the OCDA's failure to voice any objection during the lengthy process to develop the expedited habeas procedure but silence does not amount to a stipulation. Almost two years later, 16 defendants are now in limbo and some are faced with the prospect of returning to custody. And the OCSC is faced with expending additional time and resources on this issue.

"Pursuant to *Romero*, we conclude that there are no facts, issues or cause before us. The superior court's order[] [is] a nullity in the absence of the issuance of an OSC . . . and in the absence of the filing of a return. Accordingly, we reverse the superior court's order[] and remand the matter to the superior court so that it can reconsider the petition in conformity with the decisions in *Romero, supra,* 8 Cal.4th 728 . . . ." (*Olson, supra,* 149 Cal.App.4th at p. 802.)

Because we agree the trial court erred by granting relief without first issuing an OSC, we need not address whether Campbell was in custody on his prior

18

convictions and whether Proposition 47 applies to prior prison terms.  We reverse the court's order granting Campbell's petition for writ of habeas corpus.

DISPOSITION

The order is reversed and the matter is remanded.

 

 

_____

O'LEARY, P. J.

WE CONCUR:

 

_____

MOORE, J.

 

_____

IKOLA, J.