[Crim. No. 9973. Fourth Dist., Div. Two. Apr. 26, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER GARCIA FLORES, Defendant and Appellant.

462

## COUNSEL

Gregory L. Parkin, under appointment by the Court of Appeal, and Linda A. Schmidt for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Robert H. Philibosian, Chief Assistant Attorneys General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Lillian Lim Quon, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MORRIS, J.**—Defendant Peter Garcia Flores appeals from a judgment of conviction for sale of heroin (Health & Saf. Code, § 11352), and from the sentence imposed for such conviction which was enhanced because of a prior conviction for possession of marijuana on April 27, 1966.[1]

On November 22, 1977, Winston Pingrey, an undercover officer for the Riverside County Sheriff's office, and Delvin Walton, an informant, met with Vivian Willet at an apartment she shared with Cruz Aguirre in the City of Elsinore. When the two men arrived at the apartment, Willet was present with a male Latin who was introduced simply as "homes."[2] Pingrey and Walton left after Willet told them that Aguirre was out "trying to score" and would be returning soon. They returned approxi-

---

[1]Defendant was sentenced to state prison for the middle term of his base offense (four years) enhanced by one year pursuant to Penal Code section 667.5.

[2]Officer Pingrey testified that "homes" is an appellation similar to "brother" in dialectical speech.

mately an hour later and saw the man previously introduced as "homes" sitting in the passenger seat of a vehicle parked in front of the apartment. The defendant Flores was sitting in the driver's seat.

As Pingrey and Walton entered the apartment, Walton pulled $10 from his pocket. Willet advised them " 'We don't have any $10 bags either. They're all quarter bags,' " to which Pingrey responded that he would make up the price difference. While Pingrey was removing his wallet, defendant and "homes" entered the residence. Pingrey attempted to cover up a yellow balloon of heroin which was on a nearby table, but Willet told him she knew the men and that it was all right. The defendant was introduced as "Pete."

Pingrey felt of the balloon of heroin, placed it back on the table, and started to hand the $25 to Willet. She refused it saying, " 'Don't give it to me. Give it to Pete. It's his stuff.' " Pingrey handed the money to the defendant and asked him whether "it" had any procaine in it. The defendant accepted the money and responded that it did not have any procaine in it, that it was from the Los Angeles area, and that this would be "good stuff." He also told Pingrey that there should not be any problem getting quarter bags there again. The word "heroin" was not used.

The defendant testified at trial that, although he was present in the apartment, he had not seen Pingrey give any money to anyone, and had not seen any heroin. He also denied any discussion about whether the heroin had been cut with procaine.

During the course of the trial, evidence was admitted to the effect that the defendant had told a doctor that "he had a $250 a day heroin habit," and the doctor was permitted to give an opinion that confirmed defendant's addiction.

At the conclusion of the evidence, defendant requested that the jury be instructed on the defense of entrapment. This request was refused.

Finally, during the jury deliberations, the jury returned for a reading of all of the testimony presented at the trial. Counsel for defendant requested that his objections be read as a part of the record. The record before this court fails to reveal whether the reading of testimony included defendant's objections as requested. However, defendant claims it did not.

Following the verdict of guilty, the defendant moved for a new trial on the ground of misconduct of the jury. This motion was based upon affidavits signed by two jurors, stating that the other jurors pressured them to reach a verdict because further deliberations would cost the taxpayers substantial sums of money and would prevent the jurors from pursuing their normal activities. The affidavits further stated that they voted guilty because the defendant was present at the time of the sale, not because he was selling. The motion was denied on the ground that the affidavits were inadmissible under Evidence Code section 1150.

Defendant's request that a medical commission be appointed pursuant to Welfare and Institutions Code section 3051 to determine whether defendant was an addict or in imminent danger of becoming an addict was denied, and defendant was sentenced to state prison as heretofore stated.

Defendant makes numerous contentions on appeal which we consider seriatim.

1. Defendant first contends that the trial court erroneously permitted Dr. Boynton to testify to and corroborate, based on his expert medical opinion, defendant's statement that he had a $250 per day heroin habit. Defendant argues that, since proof of motive is not essential to the proof of the charges, the probative value could not outweigh the prejudicial effect of the testimony.

Prior to Dr. Boynton's testimony, defense counsel objected to the admission of his testimony relating to defendant's heroin habit. The People argued, outside the jury's presence, that it was admissible to show (1) appellant's knowledge of the nature of the substance and (2) appellant's motive in selling heroin. The court commented that weighing probative value as to motive against its prejudicial effect, the court would permit the testimony, and "reserve[d] ruling until such time as future objections might be made to that issue after the People have proceeded with their testimony to that point." ■ Since defendant did not renew his objection, the People urge that this issue is not cognizable on appeal. It is. It is clear from the record that the court reserved ruling and invited counsel to renew his objection after the foundational testimony from Boynton. Although the defendant did not renew the objection, the court's failure to rule formally, after having reserved the ruling, constituted an implied ruling against the objection and in favor of admissibility. (Witkin, Cal. Evidence (2d ed. 1966) § 1300, p. 1203; *Clopton v. Clopton*

(1912) 162 Cal. 27, 32 [121 P. 720].) Therefore, the issue is properly before us on appeal. ■ We have concluded that the evidence of defendant's heroin habit was properly admitted. The evidence was admissible on either of the grounds stated by the People. Defendant's testimony, by emphasizing that he had not seen any heroin or had any discussion about the heroin, and that "whatever was going on was none of my concern," clearly suggested that he was unaware of the nature of the transaction. Moreover, at the time the court reserved its ruling, it was possible that the defendant would claim unfamiliarity with the way heroin was packaged and sold. The evidence of defendant's habit would have been admissible to prove defendant's knowledge of the narcotic nature of the substance involved in the sale. (*People* v. *Perez* (1974) 42 Cal.App.3d 760, 766 [117 Cal.Rptr. 195].)

However, at the time the evidence was admitted, the trial court instructed the jury that its consideration was limited to the issue of motive. It was admissible for that purpose. In *People* v. *Perez, supra*, 42 Cal.App.3d 760, at page 768, this court held that evidence of a $120 a day habit was relevant and admissible "as it shed light on his motive to sell heroin, i.e., to support his narcotic habit." (See also *People* v. *Martin* (1971) 17 Cal.App.3d 661, 668 [95 Cal.Rptr. 250]; *People* v. *Bigelow* (1958) 165 Cal.App.2d 407, 418 [332 P.2d 162].)

■ 2. Defendant next contends that the court committed prejudicial error in refusing to give his requested instructions on the defense of entrapment. There was no error. The trial court is not required to instruct on a principle of law that has no application to the facts of the case. (*People* v. *Eggers* (1947) 30 Cal.2d 676, 687 [185 P.2d 1].) There was absolutely no evidence that the defendant was induced by the police officers or their agent to make the sale. The undercover officer dealt with a third party whose source turned out to be the defendant. The fact of the sale raises no inference of entrapment. Entrapment is an affirmative defense. On the facts of this case, it was not error to refuse to give the instruction on entrapment. (*People* v. *Bowie* (1977) 72 Cal.App.3d 143, 148 [140 Cal.Rptr. 49], and cases there cited.)

3. Defendant also contends that he was denied effective assistance of counsel when testimony was read to the jury without also reading the objections of counsel.

■ As previously noted, the record on appeal does not reveal whether objections were read or deleted. However, even if they were deleted,

there was no error. The objections of counsel are not *testimony*. (CALJIC No. 1.02.) The jury requested the reading of *testimony*. That testimony had already been tested by objections made by defendant's attorney. Thus defendant clearly had the assistance of counsel in determining the admissibility of the evidence.

■ 4. Defendant contends that his motion for new trial was improperly denied because the trial court refused to consider the affidavits of jurors Gospodinoff and Mongold for the purpose of impeaching the jury's verdict.

Evidence Code section 1150 provides as follows: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined. [¶] (b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict."

As the California Supreme Court explained in *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], the only improper influences that may be proved under section 1150 to impeach a verdict are those open to sight, hearing, and the other senses and are thus subject to corroboration. (*Id.,* at p. 350.) It was with this limitation clearly expressed that the court held in *Hutchinson* that "jurors are competent witnesses to prove objective facts to impeach a verdict under section 1150 of the Evidence Code." (*Id.,* at p. 351.) The limitation of impeachment evidence to proof of overt conduct, conditions, events, and statements "prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent." (*Id.,* at p. 350.)

If we examine the jurors' affidavits produced by the defendant in support of his motion for new trial, it is immediately apparent that they are inadmissible under the standards expounded in *Hutchinson.* The two affidavits are identical and both refer to what the other jurors "felt" and to affiants' subjective reasoning processes.[3] Neither affidavit quotes any

---

[3]"Because ten of my fellow jurors felt that Mr. Flores was guilty and that any more time consumed would cost the taxpayers substantial sums of money and would prevent

statement or describes any overt conduct of the other jurors. These affidavits present precisely the kind of subjective evaluation proscribed by Evidence Code section 1150, and the Supreme Court in *Hutchinson.*

The trial court properly held the affidavits inadmissible for purposes of impeaching the verdict.

5. Defendant contends that the sentencing court improperly refused to initiate civil commitment proceedings pursuant to Welfare and Institutions Code section 3051.

Section 3051 states in pertinent part as follows: "Upon conviction of a defendant for any crime in any superior court, . . . if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings . . . and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment and rehabilitation facility unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section."

█ A review of the record reveals that the court concluded that the defendant was not presently an addict nor in imminent danger of becoming addicted. Defendant asserts that, because the trial court allowed evidence that defendant had admitted a $250 a day heroin habit and the testimony of Dr. Boynton confirming defendant's addiction, the trial court abused its discretion in not ordering that narcotics addiction proceedings be instituted.

The determination whether criminal proceedings should be suspended pursuant to Welfare and Institutions Code section 3051 is a matter left to the sound discretion of the trial court. In the absence of a clear abuse of discretion, the court's decision should not be disturbed on appeal. (See *People* v. *Perry* (1969) 271 Cal.App.2d 84, 119 [76 Cal.Rptr. 725], and cases there cited.)

---

the rest of the jurors from pursuing their normal everyday activities, I changed my vote to guilty.

"I expressed the feeling to my fellow jurors that if I were to vote guilty I would be voting guilty not because Mr. Peter Garcia Flores was selling heroin on that particular occassion [*sic*], but that I would be voting guilty because he was present at that time on that particular location.

"My fellow jurors accepted my plea of guilty under that condition and then after a new vote it had turned out that there was a unanimity of opinion on the guilt of Mr. Flores."

Whatever the defendant's past history relating to the use of heroin, the court was persuaded by defendant's trial testimony and defendant's statement to the probation officer that he was not presently an addict or in imminent danger of becoming an addict. The trial court, having heard defendant's testimony at trial, and listened to defendant's statement at the time of sentencing, was clearly in the best position to evaluate whether defendant was a proper subject for addiction proceedings. We find no abuse of discretion.

6. Defendant's final contention is that the one-year enhancement of his sentence was improper.

The trial court imposed a one-year enhancement of defendant's sentence pursuant to Penal Code section 667.5. The enhancement was based on defendant's 1966 conviction for possession of marijuana for which defendant served a state prison term. Health and Safety Code section 11357 was amended in 1975 to make possession of marijuana a misdemeanor. (Stats. 1975, ch. 248, § 2, pp. 641-642.)

Defendant argues that the principle enunciated by the California Supreme Court in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], prevents the application of the enhancement provision where the Legislature has reduced the offense which constitutes the prior felony to a misdemeanor. In *Estrada,* the Supreme Court held that, where a mitigation in punishment is provided by amendment of a criminal statute, the lighter punishment should be imposed for a crime committed before the effective date of the amendment, if there is no saving clause in the amendment and it becomes effective before defendant's judgment of conviction becomes final.

Although defendant's conviction of the marijuana offense has become final, and defendant has in fact served his prison sentence therefor, defendant argues that to the extent his new sentence may be enhanced by his 1966 conviction, the effect of the conviction is not final, and in fact, is reviewable on appeal. In *In re Pine* (1977) 66 Cal.App.3d 593 [136 Cal.Rptr. 718], the court stated that for purposes of retroactivity of an ameliorative statute, the judgment becomes final at that point at which the court can no longer provide a remedy on direct review. (*Id.,* at p. 595.)

Certainly, in the case of the application of the enhancement provisions of Penal Code section 667.5, the effect of the prior conviction is not final as long as the defendant has the right of appeal from the enhanced

sentence. However, we find it unnecessary to consider whether the enhancement provision literally extends the point at which the judgment of conviction becomes final for purposes of retroactivity. It is unnecessary because of the application of another principle recognized in *Estrada,* namely, "The problem, of course, is one of trying to ascertain the legislative intent—did the Legislature intend the old or new statute to apply? Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional." (*In re Estrada, supra,* 63 Cal.2d 740, 744.) The Legislature had not done so in the *Estrada* case. Nevertheless, in the face of that legislative silence, the court concluded, "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Id.,* at p. 745.)

The amendatory act imposing the lighter sentence for possession of marijuana can obviously be applied constitutionally to prevent the enhancement of a new sentence by reason of a prior conviction of possession. Moreover, in the case at bench we are not confronted by legislative silence with respect to its purpose regarding penalties for possession of marijuana.

Effective January 1, 1976, Health and Safety Code section 11361.5, subdivision (b) was enacted to authorize the superior court, on petition, to order the destruction of all records of arrests and convictions for possession of marijuana, held by any court or state or local agency and occurring prior to January 1, 1976. (Stats. 1975, ch. 248, § 4, p. 643.) In 1976, section 11361.7 was added to provide in pertinent part that: "(a) Any record subject to destruction . . . pursuant to Section 11361.5, or more than two years of age, or a record of a conviction for an offense specified in subdivision (a) or (b) of Section 11361.5 which became final more than two years previously, *shall not be considered to be accurate, relevant, timely, or complete for any purposes by any agency or person. . . .* (b) No public agency shall alter, amend, assess, condition, deny, limit, postpone, qualify, revoke, surcharge, or suspend any certificate, franchise, incident, interest, license, opportunity, permit, privilege, right, or title of any person because of an arrest or conviction for an offense specified in subdivision (a) or (b) of Section 11361.5 . . . on or after the date the

records . . . are required to be destroyed . . . or two years from the date of such conviction . . . with respect to . . . convictions occurring prior to January 1, 1976. . . ." (Stats. 1976, ch. 952, § 2, pp. 2179-2180. (Italics added.)

It seems clear that the Legislature intended to prohibit the use of the specified records for the purpose of imposing any collateral sanctions.

The People argue that Health and Safety Code sections 11361.5 and 11361.7 were enacted "to reform disproportionate collateral civil sanctions previously applicable to marijuana offenses and not to remove penal disabilities associated with prior marijuana felony convictions."

In support of this argument the People recite that the legislative history reveals that as originally introduced in February of 1976, the bill amending section 11361.5 and enacting new section 11361.7 (Assem. Bill No. 3050 (1975-1976 Reg. Sess.)) specifically prohibited the use of a section 11357 conviction for the purpose of enhancing a sentence in a subsequent criminal proceeding. The fact, as recited by the People, that this specific prohibition was deleted from the final version of the law is interpreted as overwhelming evidence that the Legislature intended to remove collateral *civil sanctions only.*

The problem with the People's argument is that resort may be had to legislative history to ascertain the legislative purpose only when statutory language is uncertain and ambiguous. ▮ It is a cardinal rule of interpretation that a statute free from ambiguity and uncertainty needs no interpretation. "[I]nterpretation and construction is for the purpose of ascertaining the legislative will. When this is clear, interpretation is not allowable." (*Davis* v. *Hart* (1899) 123 Cal. 384, 387 [55 P. 1060].)

▮ It is difficult to see how the language of the statute could be made less ambiguous than it is. "[A] record of a conviction for an offense specified . . . shall not be considered . . . for any purposes . . . . No public agency shall . . . qualify . . . any . . . right . . . of any person because of an⸜ arrest or conviction . . . ." (Health & Saf. Code, § 11361.7.) "It is the duty of the courts to interpret statutes in such a manner that they may be free from ambiguity, and not to be ingenious to find ambiguities in them because of extraneous matters, nor is it their duty to assume the function of the law-making power." (*Rumetsch* v. *Davie* (1920) 47 Cal.App. 512, 515 [190 P. 1075].) Health and Safety Code sections 11361.5 and 11361.7 cannot be interpreted in the manner suggested by respondent without

interpolating a clause limiting their effect and changing the clear meaning.

This is not a case where giving the statutory language its normal and customary meaning results in absurd consequences inconsistent with the clear legislative intent. To the contrary, the plain language of the statute conforms exactly to the Legislature's "entirely new comprehensive statutory scheme to govern the treatment of marijuana offenses and offenders." (See *Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 826 [135 Cal.Rptr. 526, 558 P.2d 1].) As the Supreme Court noted in *Mann,* "The purpose of section 11361.7 subdivision (b) could not be clearer. As the extensive committee reports leading to the enactment of the new marijuana law reveal, one of the most significant arguments advanced in favor of the reform of marijuana laws was that under prior statutes persons convicted of relatively minor marijuana offenses were subjected to disproportionately severe sanctions, *both criminal and civil*; . . . [T]he Legislature met this problem directly, providing in the broadest terms possible that public agencies may not impose any collateral sanctions on individuals on the basis of the possession of marijuana convictions or arrests encompassed by the statute." (*Id.,* at pp. 827-828. Italics added.)

In view of the express language of the statute and the obvious legislative purpose, it would be unreasonable to hold that the Legislature intended that one who had already served a felony sentence for possession of marijuana should be subjected to the additional criminal sanction of sentence enhancement.

The People's analogy to enhancement of a second offense following a pardon for a first offense is inapposite. "[The] pardon of a convicted felon . . . 'does not restore his character,' and 'does not obliterate the act itself.' " (*People* v. *Biggs* (1937) 9 Cal.2d 508, 514 [71 P.2d 214, 116 A.L.R. 205].) The essence of pardon is forgiveness; it thus implies guilt. In the case of marijuana possession, the new laws constitute a legislative declaration that the old laws were too severe for the quantum of guilt involved. (See *Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Governing Board* v. *Mann, supra,* 18 Cal.3d 819, 826-828.)

Neither is the present case analogous to *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], where the court refused to give retroactive effect to a 1959 amendment to section 17 of the Penal Code which provided that "Where a court commits a defendant to the

Youth Authority upon conviction of a crime punishable, in the discretion of the court, by imprisonment in the state prison or fine or imprisonment in a county jail, the crime shall be deemed a misdemeanor." (Stats. 1959, ch. 532, § 1, p. 2499.) There was no suggestion there, as there is here, that the Legislature intended retroactive application. Moreover, the Youth Authority commitment under the new law involves a conscious discretionary choice by the sentencing court in contrast to a legislative determination, as here, that the prior punishment was too severe. In any event, the court in *Aranda* simply held that the refusal to apply the statute retroactively was not violative of the Fourteenth Amendment.

We have concluded that it was error to use the 1966 marijuana conviction to impose a one-year enhancement of defendant's sentence.

The enhancement is stricken and the case remanded for resentencing. Otherwise, the judgment of conviction is affirmed.

Gardner, P. J., and Kneeland, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 27, 1979.

---

*Assigned by the Chairperson of the Judicial Council.