Filed 9/26/16  P. v. Wells CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMES CARTER WELLS,<br><br>Defendant and Appellant. | F070212<br><br>(Super. Ct. No. F14903226)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant James Carter Wells was convicted by jury of inflicting corporal injury on a person with whom he had a dating relationship (Pen. Code, § 273.5, subd. (a)),[1] assault with a deadly weapon, a brick (§ 245, subd. (a)(1)), and misdemeanor vandalism (§ 594, subd. (a)(2)). In addition, the jury found true an enhancement alleging defendant used a deadly and dangerous weapon in the commission of count 1. (§ 12022, subd. (b)(1)).

Defendant admitted he had suffered one prior strike (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), one prior serious felony conviction (§ 667, subd. (a)(1)), and he had served one prior prison term (§ 667.5. subd. (b)). In a bench trial, the court found defendant had also suffered a prior serious felony conviction based on a 1983 burglary conviction. Defendant's sentence was enhanced by five years based on this conviction pursuant to section 667, subdivision (a)(1). He received an aggregate prison term of 15 years.

On appeal, defendant contends (1) the five-year enhancement based on his 1983 burglary conviction must be reversed because the trial court's determination that the offense qualified as a serious felony violated his Sixth Amendment right to a jury trial and (2) the trial court erred in admitting evidence of two prior acts. In a supplemental brief, defendant also asserts (3) one of the prior felony convictions used to enhance his current sentence was subsequently reduced to a misdemeanor under Proposition 47, and as a result, the enhancement must be stricken. We disagree, and affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

### *Prosecution's Case*

On April 6, 2014, Denise Byrns went to defendant's house in Fresno after defendant contacted her earlier and asked her to come over. Byrns and defendant had

---

[1]All undefined statutory citations are to the Penal Code unless otherwise indicated.

been in a dating relationship for 10 years and had lived together for part of that time. According to Byrns, the couple had been fighting because Byrns was not spending enough time with defendant. They made up after she came over.

When Byrns arrived, she sat on defendant's bed, watched television, and talked to him. At some point, her phone rang, but she did not answer. Defendant asked Byrns who was calling her and she told him it was "Darlene," who was probably calling for a ride. Defendant responded that he "was going to put a stop to that." Byrns interpreted this to mean defendant was going to tell Darlene not to speak to Byrns anymore. Byrns became upset and threw some Fritos chips at defendant, one of which hit him in the head.

Defendant grabbed Byrns by her neck with one hand and threw her onto the bed, falling on top of her. The pressure on her neck caused her to gag. Defendant told Byrns "[she would] never disrespect his house again." When defendant got off Byrns, she jumped out of the bed. Defendant pushed her back down and again told her she would not "disrespect his house." He squeezed Byrns' neck again. She tried to get up but defendant would not move.

Defendant's father opened the bedroom door and told defendant and Byrns "to knock it off." Byrns told defendant to "'[g]et the hell away from [her]'" and ran outside to her car. Defendant followed her outside, and as Byrns got into the driver's seat of her car, defendant threw a brick at her passenger side door, causing damage to the vehicle. Defendant manually pulled Byrns' window down. He then threw another brick through Byrns' driver side window, causing the glass to break and hit Byrns.

Byrns drove off, pulled into the parking lot of a market across the street, and called 911. The Fresno Police Department responded to the incident. After defendant was advised of his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436), he told police he had called Byrns earlier that day to discuss their relationship. The couple eventually got into an argument over defendant's new girlfriend, "Jamie." Byrns threw a handful of Fritos in defendant's face and defendant told her to get out. Defendant

3.

claimed he never threw a brick at Byrns' passenger-side door. He admitted he had held a brick while standing near her driver-side door, but claimed, "the brick slipped out of his hands," shattering the window. Defendant denied choking Byrns, but admitted he had hit her in the past.

## 2007 Criminal Threats Incident

The parties stipulated defendant suffered a prior misdemeanor conviction for making criminal threats against Byrns in July 2007. Byrns testified that in May 2007, following an argument, defendant left her several threatening voice messages. Defendant left Byrns a message in which he stated, "'You're going to be missing a family member, bitch.'" In his second message, he stated, "'I'll be over soon enough. It is about to start. Oh, yeah, it started.'" In his final message, he told Byrns, "'Get ready, I'm coming over. Call the cops or do what you got to do, but you'll feel it, oh, I guarantee it.'" After receiving the third message, Byrns called the police and played the messages for them. Defendant was arrested the following day.

Byrns testified defendant had previously made similar threats, so she was not afraid for her own safety. However, when defendant threatened her family, she became afraid he was going to hurt her daughter.

## 2004 Window Shattering Incident

Cheryl Dawn Wells testified at trial.[2] Cheryl and defendant had been married for 15 years. They were divorced at the time of the trial. In February 2004, Cheryl and defendant began arguing because Cheryl wanted to take their son to the park and defendant did not want her to leave. Cheryl took their son and got into her truck. Defendant followed her and started yelling, then threw something at her closed driver-side window. The window shattered. Cheryl did not believe this was an accident because she and defendant had been fighting.

---

[2] We refer to Cheryl Wells by her first name because she shares the same last name as defendant. No disrespect is intended.

*Defense's Case*

Defendant testified on his own behalf at trial. He explained while it was unusual for him to yell at Byrns, it was not unusual for the couple to argue. He characterized their relationship as "tumultuous" and stated they had "a love/hate relationship."

On April 6, 2014, defendant called Byrns between 7:30 and 8:30 a.m. to ask her if she was going to come by his house that day. He wanted to talk to Byrns about the fact he had been seeing Jamie. Byrns arrived sometime around 12:30 p.m. Defendant apologized to Byrns for a previous incident.

According to defendant, the couple used methamphetamine together. As defendant was getting ready to go outside to smoke a cigarette, he told Byrns he was seeing someone Byrns knew. Byrns threw some Fritos at defendant and angrily asked him whom he was seeing. Defendant told her, "[D]o [not] disrespect me in my house like that" and "If you're going to act like that, you can just leave." Byrns kept asking whom he was seeing, and defendant eventually told her it was Jamie.

Defendant said "that's when all hell broke loose." Byrns tried to slap defendant and claw him. Defendant stood up and told her to get off him and to get out of his house. Defendant's father and sister started pounding on the door, and his father said "'[k]nock it off in there'" a couple of times. Byrns opened the door and left. Defendant followed her outside and told her to leave.

Defendant came out onto the porch, kicked a rock toward Byrns' car, and told her again to get out. After Byrns was verbally abusive to him, defendant approached her and told her to shut up and to get into her car. Byrns stopped briefly at her trunk and said things about drugs that defendant believed Byrns wanted his father to hear. Byrns was standing by the driver's side of her car, and they continued to argue back and forth when defendant grabbed a loose brick off a wall. He told Byrns if she did not shut up and leave, he was "going to bust the window out of her car." He told her this again and made an overhand throwing motion to "fake it … just to give a gesture that [he] was going to

5.

bust her window if she didn't listen ...." According to defendant, the brick slipped out of his hand and broke the window.

Byrns called defendant a "rotten SOB" and opened the car door to leave, brushing glass off the seat with her hand while "[c]ussing [defendant] out the entire time." Byrns got into her car and shut her door, causing the glass that was still intact to fall into her car. Byrns backed up, running over defendant's foot. Defendant went back inside his home.

### *Defendant's 1983 Burglary Conviction*

Among other enhancements, the information charged defendant with a five-year enhancement for the prior conviction of a serious felony, a 1983 burglary, based on section 667, subdivision (a)(1).

On August 29, 2014, defendant waived his right to a jury trial on the 1983 burglary conviction.

On September 2, 2014, a bench trial commenced. Defendant's trial counsel told the court defendant was contesting the legal status of the burglary conviction. The trial court took judicial notice of the jury verdict form in the prior burglary case, as well as an unpublished appellate opinion from this Court of Appeal pursuant to *People v. Woodell* (1998) 17 Cal.4th 448, 457 ("appellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue").

Defense counsel argued the prior burglary conviction was not a serious felony, explaining the first degree burglary conviction had been subsequently reduced to a second degree conviction. The prosecutor clarified the conviction was reduced to second degree burglary because the jury was not properly instructed on the law as it pertained to burglary in 1982. Prior to January 1, 1983, burglary of a residence during the nighttime constituted a first degree burglary, whereas burglary of a residence during the daytime was only a second degree burglary. In 1983, the law was amended to eliminate the

distinction between a daytime and nighttime burglary. Thus, according to the prosecutor, although defendant's prior conviction was for a second degree burglary, the fact the conviction involved a residential burglary qualified it as a serious felony.

The trial court agreed. The court explained that pursuant to *People v. Guerrero* (1988) 44 Cal.3d 343, it was authorized to review defendant's record of conviction in making its determination. In concluding the People had proven the prior conviction qualified as a serious felony, the court relied on the following documents: (1) an information filed in Fresno Superior Court case No. 289374-1 showing defendant was charged with the October 31, 1982, entry of an occupied residence with the intent to commit larceny; (2) the Report of Probation Officer (RPO), which described the prior crime as a residential burglary; (3) a preliminary hearing transcript dated November 23, 1982, which made clear from the testimony of the victim that the crime involved the burglary of an occupied residence; (4) an appellate opinion from this Court of Appeal, with a recitation of facts indicating the crime was a residential burglary occurring during the daytime. The opinion also explained the reason defendant's first degree burglary conviction was reduced to second degree burglary was based on the fact then-existing law qualified a daytime burglary as only a second degree burglary; (5) an abstract of judgment dated May 25, 1983, which reflected a conviction of first degree burglary, and an amended abstract of judgment showing the prior conviction to be a second degree burglary; (6) statements made in the probation report by the sentencing judge which made clear the crime involved the burglary of a residence; and, (7) a section 969b packet.

## DISCUSSION

### I.      Defendant's 1983 Burglary Conviction

The parties do not dispute that whether a prior felony qualifies as a serious felony depends not on the specific criminal offense committed, but on the criminal conduct underlying the offense. (*People v. Garrett* (2001) 92 Cal.App.4th 1417, 1421; *People v.*

*Cruz* (1996) 13 Cal.4th 764.) The only issue here is whether the trial court exceeded the scope of its authority in making the determination defendant's prior conviction was a serious felony.

Defendant contends the trial court was precluded from reviewing his record of conviction to determine whether his 1983 burglary conviction was a serious felony within the meaning of section 667, subdivision (a)(1). He asserts the Sixth Amendment required a jury to make a factual finding as to whether his prior conviction involved a burglary of a residence. The People assert defendant waived his right to a jury trial on the matter. In any event, they contend the trial court was permitted to review the record of conviction to determine whether defendant's 1983 conviction was a serious felony because the trial court was not deciding a disputed fact.

We conclude defendant has forfeited the issue on appeal based on his express waiver of a jury trial on the issue.

### A. Trial Court's Power to Find Sentence Enhancements

#### *Apprendi/Blakely*

In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*), the United States Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington* (2004) 542 U.S. 296, 303 (*Blakely*), the court clarified "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." Thus, when a sentencing court's authority to impose an enhanced sentence depends upon *additional* factual findings not previously made by the jury or admitted by the defendant, the defendant has the right to a jury trial and proof beyond a reasonable doubt on the additional facts. (*Id*. at p. 304.)

8.

## B.    Forfeiture

Defendant contends the trial court violated his Sixth Amendment right to a jury trial when it made the factual finding that his prior conviction involved the burglary of an occupied residence.  He concedes his trial counsel failed to raise a claim of error pursuant to *Apprendi*, *supra*, 530 U.S. 466, but asserts the issue has not been forfeited.  He specifically argues the following:

> "[Defendant's] claim is not forfeited on appeal because defense counsel did not raise a claim of *Apprendi* error … in the trial court.  Counsel fully challenged the sufficiency of proof that his prior second degree burglary conviction amounted to a serious felony by denying the allegation, objecting to any potential finding that the 1983 conviction constituted a strike prior, and obtaining a trial as to the truth of the allegation.  [Citations.]  By challenging the legal sufficiency of proof that the prior second degree burglary conviction constituted both a strike and the basis of a prior serious felony enhancement, counsel did all that was necessary to support any legal argument directed toward the sufficiency of such proof.  (See, e.g., *People v. Wilson* (2013) 219 Cal.App.4th 500, 516-517.)"

Defendant's argument misses the mark.  The issue is not whether an *Apprendi* objection was lodged below, because we would review defendant's claim even in the absence of an objection.  The fact is defendant knowingly and intelligently waived his right to a jury trial on the issue of whether his 1983 burglary conviction qualifies as a serious felony, as well as the factual determination of whether his prior conviction involved the burglary of an occupied residence.  The record reflects the following colloquy occurred between the parties below:

> "[PROSECUTOR]:  To clarify, your Honor, counsel's not admitting the five-year prior for the May 25th, 1983 residential burglary conviction.  [¶] … [¶]

> "THE COURT:  So what about the alleged five-year prior from the 1983 conviction, would you want to present evidence on that?

> "[PROSECUTOR]:  I will, your Honor, if the court—would this be a court trial?

> "[DEFENSE COUNSEL]:  Court trial.

9.

"THE DEFENDANT: Yeah, court trial's fine. It shouldn't take long. I already know the facts in that case, so just reverse on the—it's a second degree. It's in the archives in the file for case number— [¶] … [¶]

"[PROSECUTOR]: Your Honor, as to the 1983 conviction, if [defendant's] willing to waive the jury and then we can discuss potential court trial versus admission versus what we see in the court file that the court would be requesting, could we take that waiver at this time as well? [¶] … [¶]

"THE COURT: [Defendant], you have the right to a jury trial or a court trial concerning the allegations in the First Amended Information that you suffered these prior convictions. [¶] Do you understand that, sir?

"THE DEFENDANT: Yes, sir.

"THE COURT: And do you understand the difference between a court trial and a jury trial?

"THE DEFENDANT: Yes, sir. [¶] … [¶]

"THE COURT: Okay. Now, what about the 1983 conviction that's alleged? Now, I understand that that is something you want to contest, but the question is whether you want to contest it in front of the court or in front of the jury.

"THE DEFENDANT: I'd rather just have you hear it. It's a rather brief simple matter once you have the court file.

"THE COURT: So you wish to have a court trial; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: All right. As to each of these prior convictions you have the same constitutional rights, that includes the right to a speedy, public jury or court trial, the right to be confronted by the witnesses against you, the right to not incriminate yourself, and the right to present evidence in your own defense. [¶] Do you understand that?

"THE DEFENDANT: Yes, sir. [¶] … [¶]

"[DEFENSE COUNSEL]: Your Honor, I had a clarification for the court just to make sure. With regard to [defendant's] prior record we did discuss this in motions in limine, and I believe that the court did state that [defendant] could be confronted with both of his prior alleged felony past

10.

convictions. In light of the fact that he is disputing the 1983 conviction, can we sanitize that and ask that he only be questioned with regard to one felony conviction?

"THE COURT: That wouldn't be a sanitization. That would be the court not allowing that and I don't—I hear that [defendant] is disputing whether it's a residential burglary. I don't believe he's disputing the conviction itself. It's the nature of the conviction.

"[DEFENSE COUNSEL]:· Okay.· Yes."

When defendant was subsequently cross-examined, the prosecutor asked him whether he had been previously convicted of a theft-related felony offense in 1983, he confirmed he had been. Thus, the record shows defendant was disputing whether his prior conviction qualified as a serious felony, and that he waived his right to a jury trial on the issue of whether his prior conviction involved a residential burglary. (*Shepard v. United States* (2005) 544 U.S. 13, 26, fn. 5 [a defendant "can waive the right to have a jury decide questions about his prior convictions"].) Defendant does not assert his waiver was unknowing or unintelligent, nor does it appear his waiver was defective based on our review of the record. We also observe defendant was not deprived of notice, since the information in the current case alleged a section 667, subdivision (a), five-year sentence enhancement predicated on the serious felony status of the prior conviction. Thus, we conclude defendant expressly waived his right to a jury trial and he may not be heard to complain that his right to a jury trial was violated.

To the extent defendant challenges the sufficiency of the evidence supporting the trial court's decision, we conclude substantial evidence supports the decision. The initial abstract of judgment reflected the prior conviction was originally a burglary in the first degree, which, based on the elements of the offense, would necessarily include the finding the burglary was one of an inhabited structure; the information filed charged defendant with the October 31, 1982, entry of an occupied residence with the intent to commit larceny; the probation report characterized the burglary as a residential burglary; the preliminary hearing transcript made clear the burglary involved an occupied

11.

residence; and this court's appellate opinion stated defendant's prior conviction was only reduced to a second degree burglary because the jury was improperly instructed under the 1983 burglary law, as opposed to the law in 1982, when defendant committed the crime. Given this strong evidence, we conclude substantial evidence supported the trial court's finding defendant's prior conviction qualified as a serious felony.

## II.    The Prior Acts Were Admissible

Defendant also contends the trial court erred in admitting evidence of two prior uncharged acts:  a 2004 incident where he shattered the car window of his ex-wife, and a 2007 conviction for making criminal threats against Byrns.  The People disagree, as do we.

### A.    General Legal Principles

Under Evidence Code section 1101, subdivision (b), evidence of a crime or prior act is admissible when offered to prove motive, opportunity, preparation, plan, knowledge, intent, identity, absence of mistake, or lack of accident.  Admissibility under Evidence Code section 1101, subdivision (b) depends on (1) the materiality of the facts sought to be proved, (2) the tendency of the uncharged acts to prove those facts, and (3) the existence of any rule or policy requiring exclusion of the evidence.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 22.)

Although evidence under Evidence Code section 1101 is inadmissible to show the defendant's propensity to commit crimes, under Evidence Code section 1109, evidence of uncharged and charged acts of domestic violence are admissible to show a propensity to commit such acts.  (*People v. Brown* (2011) 192 Cal.App.4th 1222, 1232-1233.)  Acts of domestic violence are defined, in part, by section 13700 and include abuse committed against an individual "with whom the suspect … has had a dating or engagement relationship."  (§ 13700, subd. (b).)  Such abuse may involve "placing another person in

12.

reasonable apprehension of imminent serious bodily injury to himself or herself, or another." (*Id.*, at subd. (a).)

Evidence admitted under Evidence Code sections 1101 and 1109 is subject to the Evidence Code section 352 balancing test. Under Evidence Code section 352, the court "may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." A trial court's exercise of its discretion in deciding whether to admit evidence offered under Evidence Code sections 1101 and 1109 is reviewed for abuse of discretion. The trial court's decision will be reversed only if its ruling was "'arbitrary, whimsical, or capricious as a matter of law.'" (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.)

### B. Window-shattering Incident

#### 1. *Procedural Background*

Prior to trial, the prosecutor moved to admit evidence of two acts, including an uncharged act in which defendant threw an object at the truck of his now ex-wife, breaking her driver-side window. The prosecutor sought admission of the prior acts pursuant to Evidence Code sections 1101 and 1109. She argued the window-shattering incident was similar to the charged offense, and the probative value of this evidence was not substantially outweighed by its prejudicial effect. The prosecutor explained the evidence would be relevant to prove motive, lack of mistake, and intent. Further, it would show defendant is someone who gets upset when he cannot control a situation. The prosecutor asserted the evidence directly contradicted defendant's claim that breaking Byrns' window was an accident.

Defendant's trial counsel argued the evidence was inadmissible because the incident was unduly prejudicial and occurred too remote in time to be relevant to the

charged offenses. The 2004 incident occurred ten years and two months prior to the charged offenses.

The trial court held the evidence was admissible under Evidence Code section 1101, subdivision (b). The court reasoned the incident was relevant to show lack of accident, stating: "[I]t appears to the Court … [if] the same accident allegedly happened twice, it probably isn't an accident." The court also noted the prosecutor would be prohibited from using the incident to argue propensity, an issue to be addressed in the jury instructions.

### 2. *Analysis*

We conclude the trial court did not abuse its discretion in admitting evidence of the 2004 uncharged window-shattering incident. Evidence of the prior act was highly probative under Evidence Code section 1101, subdivision (b) in showing defendant's charged act of shattering Byrns' window was not an accident. The jury was instructed that vandalism under section 594 requires the People to prove the defendant (1) "maliciously damaged personal property" and (2) "the defendant did not own the property." A defendant acts maliciously where he or she intentionally commits a wrongful act, or acts with the unlawful intent to injure or annoy someone else. (CALCRIM No. 2900.) "[W]hen a defendant admits committing an act but denies the necessary intent for the charged crime because of mistake or accident, other-crimes evidence is admissible to show absence of accident." (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 204.) Thus, whether defendant's act of shattering Byrns' window was intentional was a disputed issue at trial, and the prior uncharged act was properly admitted to show the charged offense was not an accident.

Evidence of the prior act was also relevant to defendant's credibility. Defendant testified the brick slipped from his hand accidentally. However, given the similarities between the prior uncharged incident and the charged offense, the jury could discredit

14.

defendant's testimony and reasonably infer he intentionally threw the brick. Although the prior act occurred ten years and two months in time before the current charged offense, the record demonstrates the trial court considered the temporal proximity between the charged and uncharged acts and concluded the incident was relevant. We agree with the trial court's determination and note that only under Evidence Code section 1109 are acts occurring more than 10 years prior to the charged offense presumptively inadmissible. (Evid. Code, § 1109, subd. (e).)

We also reject defendant's contention this evidence was disproportionately inflammatory compared to the charged offense. The jury heard limited testimony as to the 2004 incident, and unlike the charged incident, there was no indication by Cheryl Wells that defendant grabbed, struck, or cursed at her. Moreover, in closing instructions, the trial court instructed the jury to consider evidence of the prior incident only for the limited purpose of deciding whether defendant's alleged actions were the result of mistake or accident. The jury was expressly admonished it was not to conclude defendant was a person of bad character or that he had a criminal disposition. We presume jurors are intelligent people, capable of understanding the instruction and applying it to the facts of this case. (*People v. Tatman* (1993) 20 Cal.App.4th 1, 11.) Thus, we conclude the trial court did not abuse its discretion in admitting evidence of the window-shattering incident.

### III.    2007 Criminal Threats Incident

#### A.    Procedural Background

The prosecutor moved under Evidence Code section 1109 to admit evidence of defendant's 2007 conviction for making criminal threats. She argued the prior crime and current offense involved the same victim, the prior crime was probative of Byrns' fearful state of mind, and it explained her actions in attempting to flee from defendant during the commission of the current offense. Defendant's trial counsel argued defendant's prior

15.

conviction should be barred under Evidence Code section 352 because defendant was not convicted of an act involving physical violence against Byrns.

The trial court held the evidence was admissible under Evidence Code section 1109. The court also noted the prior act occurred within the 10-year presumption under section Evidence Code section 1109, subdivision (e), which provides: "Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice."

Defense counsel later argued the trial court should bar admission of the specific statements made by defendant because they were highly prejudicial, the prior act had occurred seven years prior to the charged offense, and could indicate to the jury that "[defendant] has continually abused … Byrns for seven years, instead of looking at these facts in somewhat of an isolated scenario."

The trial court admitted the statements, reasoning there was no indication they fell outside the definition of domestic violence under section 13700. The court explained the statements were probative because they involved the same victim, and it further found defendant's mere words would not be so prejudicial as to cause the jury to render a verdict based on emotion.

The specific statements admitted were three messages left by defendant for Byrns. First, defendant stated, "'You're going to be missing a family member, bitch.'" Second, defendant stated, "'I'll be over soon enough. It is about to start. Oh, yeah, it started.'" Finally, defendant left a message threatening, "'Get ready, I'm coming over. Call the cops or do what you got to do, but you'll feel it, oh, I guarantee it.'"

**B.    Analysis**

Defendant asserts the following: "The 2007 incident lacked probative value because [defendant] was convicted of criminal threats in that case, whereas here, he was

charged with inflicting corporal injury and assault with a deadly weapon, not criminal threats." Defendant's claim is without merit.

The fact defendant had made criminal threats to the same victim on a prior occasion tends to show defendant was predisposed or inclined to commit acts of domestic violence, and it was relevant to show he acted with the intent to inflict injury on Byrns during the commission of the charged offenses. Under Evidence Code section 1109, prior threats and acts of violence against a victim are admissible to prove motive in a subsequent prosecution where the defendant is accused of inflicting violence or threatening violence against the same victim. (*People v. Fruits* (2016) 247 Cal.App.4th 188, 204.) Here, whether defendant willfully inflicted physical injury on someone with whom he had or previously had a dating relationship with was an element of the inflicting corporal injury charge against him. (§ 273.5, subd. (a).) Thus, the prior act was relevant.

Contrary to defendant's assertion, the prior act and the current act do not have to be based on the same offense. It is defendant's propensity to commit violent acts that makes the prior act relevant to the charged offense under Evidence Code section 1109. We also observe this evidence was admissible under Evidence Code section 1101, subdivision (b) because it was relevant to show defendant's motive in committing the charged crimes, his particular intent to commit the charged crimes, and because the evidence demonstrated the absence of any mistake or accident.

Moreover, the probative value of defendant's prior statements was not substantially outweighed by the danger of undue prejudice. While the messages were undoubtedly disturbing to Byrns, we disagree with defendant's assertion the messages were so disturbing they would inflame the emotions of the jury. We, therefore, conclude the trial court did not abuse its discretion in admitting evidence of defendant's 2007 criminal threats conviction.

17.

**IV.    Proposition 47 Does Not Alter Defendant's Prior Prison Term Enhancements**

In a supplemental brief, defendant asserts his sentence is unauthorized based on the fact one of the prior convictions used to enhance his current sentence has subsequently been reduced to a misdemeanor pursuant to Proposition 47 (the Safe Neighborhoods and Schools Act or the Act).

In 2005, defendant was convicted of unauthorized possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), then a felony. In October 2014, one month before the passage of Proposition 47, defendant was sentenced in the instant case. His 2005 conviction was used to enhance his current sentence as a prior prison term (§ 667.5, subd. (b)). In June 2015, the trial court granted defendant's petition to reduce his prior felony conviction to a misdemeanor under Proposition 47 (§ 1170.18). Defendant contends the prior prison term enhancement based on this conviction must now be stricken as a result. The People disagree, as do we.

Defendant contends *People v. Flores* (1979) 92 Cal.App.3d 461 (*Flores*) is instructive. Flores was convicted in 1966 for possession of marijuana, for which he served a prison term. (*Id*. at p. 470.) In 1977, he was convicted of selling heroin. (*Id*. at pp. 464-466.) His sentence for selling heroin was enhanced by one year under section 667.5, based on his 1966 conviction. (*Flores*, at p. 470.)

Flores sought to overturn his 1966 conviction on the basis of subsequent legislation reducing the penalty for marijuana possession and mandating the destruction of records of arrests and convictions pertaining to marijuana possession crimes. (*Flores, supra*, 92 Cal.App.3d at pp. 471-472.) The appellate court held Flores was entitled to the relief he sought because the Legislature's destruction-of-records mandate evinced a clear intent to prevent those records from being used to enhance future sentences. (*Id*. at pp. 472-473.)

Unlike the mandate in *Flores*, neither the plain language of Proposition 47 nor the ballot materials shows a clear intent by the voters that Proposition 47 applies

18.

retroactively to alter sentence enhancements. Nonetheless, defendant advances several arguments in support of his assertion the Act has a retroactive effect.

First, citing to general objectives behind Proposition 47, defendant contends the proponents of the Act wanted its reach to be as extensive as possible. Ballot materials suggest the passage of Proposition 47 would ensure prisons would house only violent and serious offenders, rather than those who commit low-level crimes, such as drug possession and petty theft. (Official Voter Information Guide, Gen. Elec. (Nov. 4, 2014) argument in favor of Prop. 47, p. 38.)

While neither Proposition 47 nor the Act's ballot materials addresses section 667.5 or recidivist enhancements generally, the materials indicate voters were assured that if the initiative was passed, dangerous criminals would remain locked up and there would be no automatic release of criminals. (Voter Information Guide, Gen. Elec., *supra*, text of Proposition 47, § 3, subds. (4), (5), p. 70); *id*., rebuttal to argument against Proposition 47, p. 39.) Section 667.5 is a recidivist enhancement, intended to punish hardened criminals who are undeterred by the fear of prison. (*In re Preston* (2009) 176 Cal.App.4th 1109, 1115.) Because a person who refuses to reform even after serving time in prison is clearly more dangerous than someone who merely possesses drugs for personal use or shoplifts, we are not persuaded the voters intended Proposition 47 to necessarily alter prior prison term enhancements.

Second, defendant argues Proposition 47 clearly envisioned retroactive relief for those who qualified. He cites to subdivisions (f) and (g) of section 1170.18. Subdivision (f) permits an inmate currently serving a sentence for a Proposition 47 reducible felony to petition the superior court for recall of his or her sentence. (§ 1170.18, subd. (f).) Subdivision (g) states: "[i]f the application satisfies the criteria in subdivision (f), the court shall designate the felony offense or offenses as a misdemeanor." (§ 1170.18, subd. (g).) However, nothing within the plain language of these subdivisions nor the statutory

19.

scheme of which they are a part indicates a prior prison term enhancement may be stricken as a result of a felony conviction subsequently reduced by the Act.

According to defendant, because a prior offense is reduced to a misdemeanor under the Act "for all purposes," a prior prison term enhancement must be eliminated because there is no longer a felony underlying the enhancement. Defendant cites to *People v. Park* (2013) 56 Cal.4th 782 (*Park*) which held, "when a wobbler has been reduced to a misdemeanor, … the prior conviction does not constitute a prior felony conviction within the meaning of section 667(a)."

Defendant's reliance on *Park* is misplaced. In *Park*, the trial court reduced the defendant's prior felony conviction to a misdemeanor, and then dismissed the conviction. (*Park*, *supra*, 56 Cal.4th at p. 787.) The defendant's prior conviction was reduced to a misdemeanor under section 17, subdivision (b)(3), which provides, "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail …, it is a misdemeanor for all purposes … [¶] … [¶] [w]hen the court grants probation to a defendant without imposition of sentence and at the time of granting probation … declares the offense to be a misdemeanor." Our Supreme Court held the conviction no longer qualified as a prior serious felony within the meaning of section 667, subdivision (a), and could not be used to enhance the defendant's sentence for crimes he subsequently committed. (*Park*, at p. 787.) Critically, however, the trial court's reduction and dismissal of the prior felony conviction occurred before the defendant was sentenced for any new crimes.

Here, defendant's sentence had already been enhanced based on his prior offenses. The *Park* court considered this scenario and stated, "There is no dispute that … defendant would be subject to the section 667(a) enhancement had he committed and been convicted of the present crimes before the court reduced the earlier offense to a misdemeanor." (*Park, supra*, at 56 Cal.4th p. 802.)

20.

Defendant contends *Park* is distinguishable because section 17, subdivision (b) is discretionary in nature, whereas resentencing under section 1170.18, subdivision (f) is mandatory for those who qualify. We fail to see why this distinction is relevant. The *effect* of a trial court declaring an offense to be a misdemeanor—whether it was required to do so or whether it exercised its discretion in so doing—is what is relevant for purposes of our analysis.

The commission of a wobbler is a felony at the time the offense is committed, and remains a felony until the crime is characterized as a misdemeanor, or the perpetrator is convicted and sentenced to something less than incarceration in state prison. (*People v. Moomey* (2011) 194 Cal.App.4th 850, 857.) Under section 17, subdivision (b), when the court exercises its discretion to sentence a wobbler as a misdemeanor, "it is [then considered] a misdemeanor for all purposes." However, the "misdemean[or] status [is] not … given retroactive effect." (*Moomey*, at p. 857.) So, while an offense may be a misdemeanor "for all purposes," it is not a misdemeanor "for all times." The trial court's declaration that a wobbler is a misdemeanor simply makes the offense a misdemeanor from that point on.

Section 1170.18, subdivision (k) provides the following, in pertinent part: "Any felony conviction that is … designated as a misdemeanor under subdivision (g) shall be considered a misdemeanor for all purposes …." The phrase "for all purposes" is identical to language in section 17, subdivision (b). "When legislation has been judicially construed and a subsequent statute on a similar subject uses identical or substantially similar language, the usual presumption is that the Legislature [or the voters] intended the same construction, unless a contrary intent clearly appears." (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1100.) However, nothing in the plain language of section 1170.18 or the ballot materials reflects a contrary intent. (*Rivera*, at p. 1100.) Plainly stated, nothing indicates the voters intended a conviction reduced to a misdemeanor under the Act to be considered a misdemeanor "for all times."

Based on the language of section 1170.18 and the voter's intent in passing the initiative, we conclude Proposition 47 does not apply retroactively to alter sentence enhancements. As a result, we reject defendant's claim he is entitled to have his prior prison term enhancement stricken.[3]

## DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
DETJEN, J.

---

[3]We note the issue is currently pending review in the California Supreme Court. (See *People v. Ruff* (2016) 244 Cal.App.4th 935, review granted May 11, 2016, S233201; *People v. Valenzuela* (2016) 244 Cal.App.4th 692, review granted Mar. 30, 2016, S232900; *People v. Carrea* (2016) 244 Cal.App.4th 966, review granted Apr. 27, 2016, S233011; *People v. Williams* (2016) 245 Cal.App.4th 458, review granted May 11, 2016, S233539.)